## MARY W. D. SCHAFFER & others *vs.* ALEXANDER WADSWORTH, administrator, & others.

A testator gave one fourth of his property to his son A. and one fourth to his son B. The other two fourths he gave to his executors, in trust to pay one half of the income to his daughter C. annually for life, and on her death to pay over and divide said moiety annually to A., B. and the legal representatives of a deceased daughter D. ; and to pay the other moiety of the income of the trust property (and at the death of C. the proportionate share of her income which would fall to them) to the representatives of D. ; and after the expiration of fifteen years from the date of the will, or as soon as his youngest living grandchild should become of age, then the trust property to be sold, and the proceeds divided between the representatives of A., B. and D., and the executors then to be discharged from the trust. *Held*, that no distribution of the trust fund was to take place till the death of C., although fifteen years had elapsed from the date of the will.

Under a direction in a will to invest trust property in productive real estate, it may be invested in dwelling-houses, and the persons entitled to the income be allowed to occupy them.

BILL IN EQUITY, filed October 29, 1869, by the children and legal representatives of John Odin, Jr., and of Esther Dorr, wife of Benjamin Dorr, against the administrator with the will annexed of John Odin, and Day O. Kellogg, Harriet W. O. Kellogg, his wife, and the children and legal representatives of Amelia Currier, wife of Benjamin H. Currier, praying for a decree for the distribution of a portion of the trust fund under said will. The case, as it appeared from the bill and answers, on which it was reserved by *Ames*, J., for the determination of the full court, was as follows:

John Odin died in 1854, leaving a son, John Odin, Jr.; two daughters, the said Esther Dorr, and the said Harriet W. O. Kellogg; and the children of his deceased daughter, the said Amelia Currier. By his will, dated March 23, 1853, after sundry bequests, he directed, in the sixth item, all his remaining property to be divided into four parts, of which he gave one to John Odin, Jr., and one to Esther Dorr. The other two he gave to his executors, "the survivors or survivor of them, to be invested in productive real estate, in trust, however, for the following purposes: One half of the income of said property is to be paid, by my executors as aforesaid, annually to my daughter Harriet, wife of Day O. Kellogg, so long as she shall live, and at and after her decease said moiety shall be annually divided and paid over by my said executors to my daughter Esther, my son John, and the legal representatives of the legatee hereafter mentioned in the seventh item, or to their respective heirs or assigns."

The seventh item was as follows: "I do hereby direct my said executors, the survivors or survivor of them, to pay over annually the other moiety of the income of said trust property (and at the death of my daughter Harriet as aforesaid, the proportionate share also of her income which would fall to this legatee) to Benjamin H. Currier, or his legal representatives, for the benefit of the children of my daughter Amelia, deceased. And I do further direct that, after the expiration of fifteen years from the

date of this instrument, or as soon as my youngest living grand-child shall have reached its majority, said real estate, so held in trust by my executors as aforesaid, shall be sold, and the proceeds thereof shall be equally divided, *per stirpes*, between the legal heirs and representatives then living of my son John, my daughters Esther and Amelia ; and then and at that time my said executors shall be discharged from their said trust." Mrs. Kellogg at the date of the will was forty-nine years old and childless.

The executors paid one quarter of the residue of the testator's estate to John Odin, Jr., and one quarter to Esther Dorr. The remaining one half they invested in a dwelling-house in Brooklyn in the state of New York, and a dwelling-house in Jamaica Plain in this Commonwealth. The former has always been occupied by Mr. and Mrs. Kellogg ; and the latter was occupied by Benjamin H. Currier and the children of his wife, till within a year before the filing of the bill, and since he left it he has taken the rents of it. As the house in Brooklyn cost more than the house in Jamaica Plain, Day O. Kellogg has paid annually to Benjamin H. Currier a sum which has been accepted in full satisfaction of the difference of interest between the cost of the two houses. John Odin, Jr., and Esther Dorr have died, as have also the executors of John Odin, and the defendant Wadsworth has been appointed administrator with the will annexed. At the date of filing the bill, the youngest living grandchild of the testator was under age.

*E. Blake*, for the plaintiff. The testator gave the moiety of the income of the trust property to Mrs. Kellogg during her life, and on the expiration of fifteen years from the date of his will he ordered the property to be sold, the proceeds divided among his other issue, and his executors discharged. These provisions are contradictory ; the testator did not suppose that Mrs. Kellogg would live fifteen years. The fair and reasonable mode of reconciling them is now to sell and distribute one half of the property, leaving the distribution of the other half till the death of Mrs. Kellogg. It is enough that fifteen years have elapsed from the date of the will, although the youngest grandchild is not of age.

*W. A. Field,* for the children and legal representatives of **Mrs. Currier.** The clear intention of the testator is, that the trust shall continue during the life of Mrs. Kellogg, and that the whole of the trust property shall remain in trust until the whole trust ceases. The fairest construction is, to hold that the trust is to continue until the happening both of the death of Mrs. Kellogg and of either the expiration of the fifteen years or the arrival at majority of the youngest grandchild. This gives effect to all the words of the will. The only present interest the plaintiffs have in the property is to have it properly invested in productive real estate; and that has been done.

*W. W. Peck,* of New York, for Mrs. Kellogg.

WELLS, J. The testator, after sundry bequests, directed that all his remaining property should be divided into four equal parts. He gave one quarter each to a son and daughter. The other two quarters he gave to his executors, to invest and hold in trust. One half of the income he directed to be paid annually to his daughter, Harriet Kellogg, during her life. All parties assume that this life interest is not shortened by the subsequent provision for sale and distribution. The other half of the income he directed to be paid annually for the benefit of the children of his daughter Amelia, deceased; but there is no limitation, in terms, for this interest in said income.

The next clause is as follows : " And I do further direct that, after the expiration of fifteen years from the date of this instrument, or as soon as my youngest living grandchild shall have reached its majority, said real estate, so held in trust by my executors as aforesaid, shall be sold, and the proceeds thereof shall be equally divided, *per stirpes,* between the legal heirs and representatives then living of my son John, my daughters Esther and Amelia; and then and at that time my said executors shall be discharged from their said trust."

All parties assume that the property thus to be distributed consists of the whole of the two quarters held · by the executors in trust, and of that alone; and that the result of all three provisions will be to give to the children of Amelia, after the termination of the trust, only one half of what would be their equal share

of the testator's estate. The question now presented is whether the trust is divisible, so that one half of the property held in trust must now be distributed, and the half of the income thereof, here-tofore payable for the benefit of the children of Amelia, cease to be so payable.

The plaintiff relies upon the terms of the provision for distri-bution, as requiring it to be made at the expiration of fifteen years from the date of the will, or earlier if the youngest living grandchild should reach majority within that period.

Taking the clause which contains this provision by itself, it would require the distribution to be made at one or the other of these periods. But it requires the whole to be so distributed; and there is nothing in the will to indicate that it was contem-plated that any part should be distributed until the trust should be terminated. On the contrary, by the terms of this same clause, and as a result of the distribution therein directed, it is provided that the trustees shall then be discharged from their said trust. This clause fixes the time for the termination of the trust in as absolute and unqualified a manner as it does for the distribution of any part of the trust property.

But from the preceding clauses it is manifest, as it is conceded by the plaintiff, that the trust must continue during the life of Mrs. Kellogg, and at least one half of the trust property be with-held from such distribution, if now made. We think also that the will indicates that the trust property was intended to be held as one fund, the income only to be divided during the continuance of the trust. The provisions of the will appear to have been drawn upon the supposition that the period of fifteen years would extend beyond the life of Mrs. Kellogg. After her decease, the half of the income until then payable to her was to be divided between Esther, John, and the children of Amelia, the trust con-tinuing. We think the period, fixed alternatively in the clause requiring distribution of the trust property, must yield to the necessity of the continuance of the trust during the life of Mrs. Kellogg, and the manifest intent of the testator that the provis-ion should be carried into effect by the discharge of his executors from their trust at the same time with the distribution therein

directed. It is conceded that it must so yield, as to one half of the trust property, in order to satisfy the bequest to Mrs. Kellogg. This results from the principle of construction that all the provisions of the will are to be considered together in order to ascertain the real intent of the testator; and that particular directions must yield to the general intent, if inconsistent therewith. But the office of construction is to ascertain the intent of the testator; not to supply a judicial administration of the estate. The intent of the testator, as thus ascertained, makes the termination of the trust and distribution of the trust property subsequent, in the order of events, to the expiration of the life interest of Mrs. Kellogg. Although that intent is found in provisions which extend to only one half of the income of the trust, its operation, when found, is not to be limited in like manner. As already suggested, the will contains no indication that any part of the property was intended to be distributed until the termination of the trust, but the contrary. It may be said that if the provision for distribution was drawn, as it would seem to have been, upon the supposition that the life interest of Mrs. Kellogg would end before that time, there could be no intent to postpone the distribution of the property beyond the period particularly designated; and that the postponement conceded results only from the necessity of the case in the practical execution of the will. But that supposition excludes the idea of any particular intent of the testator, applicable to the contingency which has occurred. The court cannot supply what it may be supposed would have been his intent if he had undertaken to express one. But the general intent that the trust should continue during the life of Mrs. Kellogg, and that the termination of the trust and distribution of the property as one fund should take place at one and the same time, both of which do appear from the will, must therefore govern in the construction and execution of the will, rather than a direction which, in the contingency that has happened, is manifestly inapplicable, and incapable of being carried into effect without essential modification.

Under this will, we are of opinion that no distribution can take place during the life of Mrs. Kellogg; and that until distribution

the trust is to remain entire, and the income to be divided according to the terms of that trust.

We see no grounds for interference with the mode of investment adopted by the trustees. *Bill dismissed, with costs.*