WILSON D. CLARK, JUNIOR, & another, executors, *vs.* BOSTON SAFE DEPOSIT AND TRUST COMPANY.

Suffolk.   November 4, 1943. — November 30, 1943.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Trust,* Express trust: construction.

Upon construction, without aid from extrinsic sources, of the whole of a trust instrument designating in paragraphs and subparagraphs many beneficiaries for distribution of capital in groups with stated priorities, a conflict or discrepancy between two paragraphs respecting whether a gift to a beneficiary which, if funds were available, was payable at the death of the settlor but could not then be paid because sufficient funds were not available until the subsequent death of an annuitant, should be paid from funds which became available when the annuitant died, properly was resolved by the trustee in favor of such payment being made.

BILL IN EQUITY, filed in the Superior Court on January 7, 1943.

The suit was heard by *O'Connell,* J., who reserved and reported it for determination by this court.

*E. Field,* (*M. B. Lynch* with him,) for the plaintiffs.

*J. E. Rogerson,* (*C. M. Rogerson* with him,) for the defendant.

QUA, J.  By agreement in the Superior Court the sole issue in this case is whether the defendant as trustee under an indenture of trust dated June 20, 1924, between Mary A. Guild and the defendant rightly paid to Ralph Greenleaf and to W. R. Greenleaf the sum of $500 to each mentioned in paragraph (9) of the indenture.  The plaintiffs are the executors of the will of the residuary remainderman under the indenture and will be entitled to an additional $1,000, if the two sums of $500 were wrongly paid.

By the indenture Mary A. Guild transferred certain securities and property to the defendant in trust to make certain payments to Mary A. Guild and to Mary S. Page during the lifetime of the former.  The indenture then provided in paragraph (5) that upon the death of Mary A. Guild the defendant should pay to Mary S. Page $100 a month during her lifetime and directed the defendant to set aside and to hold in trust such portion of the trust property as the defendant should deem sufficient to make these payments, and upon the death of Mary S. Page "to dispose thereof and of the balance of the trust property if any remaining after the payments herein in paragraphs (6) and (9) inclusive provided for have been made in accordance with paragraphs (10) and (11) hereof."  Paragraph (6) provided in seven subparagraphs lettered respectively from "(a)" to "(g)" for the payment of seven specified sums of money aggregating $11,500 to seven named persons.  Paragraph (7) provided that if the balance of the trust property should be more than sufficient to make "the seven (7) foregoing payments in full, the following payments . . . [should] be made: . . . ."  Then follow five subparagraphs lettered respectively "(h)" to "(l)" providing for five payments aggregating $5,000 to five named persons.  Paragraph (8) provided that if the balance of the trust property should be sufficient to make the payments in subparagraphs "(h)" to "(l)" (of paragraph [7]), the sum of $500 should be paid to each of eight persons named in eight additional subparagraphs lettered "(m)" to "(t)".  Then came paragraph (9) with

the provision that if the balance of the trust property should be "sufficient to make said payments in full," the sum of $500 should be paid to Ralph Greenleaf and W. R. Greenleaf, if living, and that if the balance should be insufficient "each . . . [should] abate pro rata." Paragraph (10) began the provisions for distribution of the sum remaining upon the death of Mary S. Page. It contained a provision for the payment of $5,000 as said Mary S. Page might in her lifetime appoint. Paragraph (11) provided that after paying the $5,000 last mentioned, the defendant should "dispose of the trust property in its hands as follows: —" Then came a subparagraph "(a)" reading in part, "If any of the payments hereinabove in [sub]paragraphs (a) to (t) inclusive [of paragraphs (6) to (8) inclusive] shall not have been made in full, such payments shall be completed in the same order of priority as above set forth. . . ". A subparagraph "(b)" of paragraph (11) provided for three payments of $500 each to three named persons. A subparagraph "(c)" provided that if the trust property should be sufficient to make in full all three of the payments last above mentioned, four more payments should be made to four named charities, and that any balance remaining should be paid to the plaintiffs' testator, who thus became the final residuary distributee.

Mary A. Guild, the settlor of the trust, died on February 1, 1927. The trust property then amounted to $46,866.18. In accordance with paragraph (5) the trustee then set apart the sum of $30,181.79 for the purpose of maintaining the payments of $100 a month to Mary S. Page. The balance of the trust property then available was sufficient to pay in full the sums designated in the lettered subparagraphs of paragraphs (6) and (7), being those lettered (a) to (l) inclusive, and the defendant paid these sums. The remaining balance was insufficient to pay in full the sums designated in the lettered subparagraphs (m) to (t) inclusive of paragraph (8), and each of these sums abated pro rata. Nothing then remained with which to pay the two gifts to the Greenleafs under paragraph (9). But upon the death of Mary S. Page on February 15, 1938, the sum set apart to pay her annuity became available for distribution, and the defend-

ant then paid over to Mary S. Page's appointees the $5,000 appointed by her, made up the previously unpaid deficiencies in the sums designated in subparagraphs (m) to (t) inclusive of paragraph (8), and paid the two sums of $500 each payable to the Greenleafs under paragraph (9), leaving a balance still payable to the estate of the plaintiffs' testator as ultimate remainderman under paragraph (11) (c). The plaintiffs contend that that balance should be larger by the $1,000 paid to the Greenleafs.

The difficulty arises out of a conflict or a discrepancy between paragraph (5) and subparagraph (a) of paragraph (11) in that paragraph (5) directs the defendant as trustee, upon the death of Mary S. Page, to dispose of the balance of the trust property remaining "after the payments" mentioned "in paragraphs (6) and (9) inclusive" "in accordance with paragraphs (10) and (11)," while subparagraph (a) of paragraph (11) calls for a distribution which would secure payment of all the previously unpaid amounts of the gifts in the lettered subparagraphs of paragraphs (6) to (8) inclusive and would then permit the payment of the new and subordinated gifts designated for the first time in paragraph (11) without first paying the previously designated unlettered gifts to the Greenleafs in paragraph (9). Either there was a mistake in mentioning paragraph (9) in paragraph (5) or there was a mistake in failing to mention paragraph (9) in subparagraph (a) of paragraph (11) in referring to the previous gifts. The difficulty is apparent on the face of the indenture. No help is available from extrinsic sources.

We think that the express mention of paragraph (9) in paragraph (5) outweighs, as an indication of the settlor's intent, her failure to mention paragraph (9) in subparagraph (a) of paragraph (11). See *Taylor* v. *Albree*, 309 Mass. 248, 253. In reaching this conclusion we are greatly assisted by a view of the general scheme and structure of the trust as a whole. In addition to providing for herself and Mary S. Page, the settlor apparently intended to make specific gifts of varying amounts to twenty-nine different persons and charities before giving the residue to the plaintiffs' testator. She grouped these gifts into six separate groups. The gen-

eral plan was that each group should have priority over all succeeding groups in the order in which she set them forth in the indenture. The two gifts to the Greenleafs constituted the fourth group. The settlor seems to have thought it possible that the gifts of the first four groups might be paid at her own decease out of the money not needed to be set apart to maintain the payments to Mary S. Page, but she was not sure that this would be so. When, therefore, she provided for the fifth and sixth group of gifts to be paid after the death of Mary S. Page and after the sum set apart to maintain the payments to Mary S. Page should become available, she took pains to provide that if previously expressed preferred payments should not have been made in full, they should be "completed in the same order of priority as above set forth." It is difficult to believe that the settlor, having obviously desired to make the gifts of the fourth group, should desire that those gifts should be wholly lost and superseded by gifts of later classes if they could not be paid at her own death, while she carefully preserved the gifts to all the other groups payable at her death and gave them priority over the groups that became payable only after the death of Mary S. Page. That result would be difficult to reconcile with the plan of the indenture, and although we might be obliged to adopt it, if it were not for the reference to paragraph (9) in paragraph (5), it would be inconsistent with that reference. Moreover, if the construction contended for by the plaintiffs should be adopted, whether the Greenleaf gifts would ever become payable would have depended upon the precise sum which the defendant might have decided to set apart to maintain the payments to Mary S. Page, and, as events have turned out, it would have the result that the daughter of Ralph Greenleaf would receive a gift in the fifth group, although her father in the fourth group would lose his gift altogether.

Paragraph (5), when considered in the light of the scheme of the instrument as a whole, is sufficient to save the Greenleaf gifts. See *Fitts* v. *Powell*, 307 Mass. 449, 454; *Poor* v. *Hodge*, 311 Mass. 312, 315–316.

The judge rightly ruled that the bill should be dismissed.

*Bill dismissed with costs.*