ALFRED P. PUTNAM & others, executors, *vs*. ALFRED P. PUTNAM & others, trustees, & others.

Essex.    April 3, 1974. — September 20, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Trust,* Taxation, Marital deduction trust.  *Devise and Legacy,* Marital trust, Extrinsic evidence affecting construction.  *Jurisdiction,* State law affecting Federal tax.  *Evidence,* Extrinsic affecting writing.

The accomplishment of identifiable tax objectives may be an aid to the interpretation of a will and to the extent it is reasonably consistent with the language of the will and applicable legal principles, effect should be given to that intention.  [268]

Where one provision of a testator's will indicated an intent that a testamentary trust be funded by an amount equal to the maximum marital deduction allowable under the Federal estate tax law but another provision required the trust to pay State inheritance taxes allocable to future interests under the trust, extrinsic evidence might be used to show the circumstances surrounding the execution of the will so as to resolve the ambiguity in the will caused by the inheritance tax provision reducing the trust below the maximum amount.  [269]

Where a testator's will indicated a clear intent to take advantage of the maximum Federal estate tax marital deduction, an omission by counsel in failing to remove from the testator's will a conflicting provision which had been contained in an earlier will drawn for the testator's wife should not control the construction of the will to defeat the testator's primary estate tax motive.  [270-271]

Where the provisions of a will indicated an intent by the testator that a testamentary trust qualify for and be funded in an amount equal to the maximum marital deduction allowable to the testator's estate under the Federal estate tax law, but another provision required that each testamentary trust was to be the source for payment of any State inheritance taxes later due because of future interests in such trust, thereby reducing the marital trust below the maximum amount, the conflict must be resolved by construing the will, in light of both its primary tax purpose and relevant extraneous evidence, to require any inheritance taxes allocable to the marital trust to be paid from a residuary trust so as to preserve the maximum marital deduction.  [270-271]

BILL IN EQUITY filed in the Probate Court for the county of Essex on June 14, 1973.

The suit was reserved and reported by *Mayo,* J.

*Samuel B. Potter* (*Earle W. Carr* with him) for the plaintiffs.

*Thomas H. Belknap,* of New York, for the defendant trustees.

*George H. Kidder & George T. Shaw,* for Bessie W. Phillips, submitted a brief.

WILKINS, J.   We are here presented with the question whether, in the funding of a testamentary trust for his wife, Stephen Phillips (Phillips) intended that his estate take advantage of the maximum marital deduction allowable under the Federal estate tax law. If we conclude that Phillips had such an intention in the funding of the marital trust, we must then resolve the apparent conflict between that intention and a provision in his will which by its terms places the burden on the marital trust to satisfy inheritance taxes on future interests in that trust.[1] The Internal Revenue Service has taken the position that the maximum marital deduction allowable with respect to the Phillips estate must be reduced by the amount of the largest possible inheritance taxes on future interests which might be payable out of the marital trust.[2]

---

[1] The first two sentences of article 12 of Phillips's will read as follows: "Except as provided in the next succeeding sentence, I direct that all estate, inheritance, legacy and succession taxes, or taxes in the nature thereof, occasioned by my death which may be levied or assessed against the executors or against the Trustees, or for which the executors or Trustees may be liable, even though such taxes may be assessed in whole or in part with respect to property which does not come into the possession of the executors or Trustees, shall be paid from the general assets of my estate as an expense of administration. Inheritance taxes on future interests in any trust hereunder paid after the establishment of the trust shall be paid from the principal of the trust with respect to which the tax is assessed or imposed."

[2] For the purposes of this opinion we accept as valid the contention of the Internal Revenue Service that if the marital trust must bear the burden of Massachusetts inheritance taxes on future interests created under that trust, the marital deduction available with respect to the value of the gift to the marital trust must be reduced. Whether the decision to disallow the full marital deduction was proper under the Internal Revenue Service's interpretation of the will is a question of Federal tax law on which our view has not been sought. Even if our view on this question were sought and given, it would not be binding on Federal taxing authorities. Our conclusion, however, as to the testamentary intention of Phillips is one of State law and is binding on the Internal Revenue Service which has been served in this proceeding. See *Mazzola* v. *Myers,* 363 Mass. 625, 633-634 (1973).

Phillips died a resident of Salem in 1971, survived by his widow and their three daughters. His estate was substantial, having a value of many millions of dollars.[3] He left a will which he executed in 1957 and three codicils, dated 1958, 1959, and 1964. The third codicil was prepared by counsel for Phillips seemingly for the purpose of meeting the Federal tax requirements underlying Revenue Procedure 64-19. See 1964-1 C. B. 682. The will and codicils reflect substantial thought by Phillips concerning the disposition of his property.

In article 6 of his will Phillips provided that if his wife survives him, "I give, devise and bequeath to my Trustees hereinafter named *that fractional share of my residuary estate* (as defined above) *which will equal the maximum marital deduction allowable* in determining the Federal Estate Tax by reason of my death, diminished by the aggregate value of all other property which qualifies for such marital deduction and which passes or has passed to my said wife under other articles of this will or otherwise than under this will" (emphasis supplied). The balance of the introductory paragraph of article 6 of Phillips's will is set forth in the margin.[4] Article 6 continues with trust provisions which require the payment of income to Mrs.

---

[3] The statement of agreed facts does not reveal the value of Phillips's gross estate for Federal estate tax purposes. We do know that if the position of the Internal Revenue Service is correct (disregarding credits for the Massachusetts estate or "sponge" tax) 73% in part and 76% in part of the lost deduction will have to be paid as additional Federal estate taxes. It would appear therefore from the applicable tax rates (see Int. Rev. Code of 1954, § 2001, as amended through 26 U. S. C. § 2001 [1970]) that after reflecting all deductions, including the undisputed portion of the marital deduction trust, Phillips's taxable estate for Federal estate tax purposes represented more than $8,000,000 but less than $10,000,000.

[4] "In making the computations necessary to determine such fractional share, the values, as finally determined in the Federal Estate tax proceedings in my estate of the items constituting my gross estate for the purpose of such tax shall be used. Only assets which qualify for the marital deduction in my estate shall be allocated to this trust fund. I intend the trust hereby created to be a true fractional share of my residuary estate, and therefore I direct my Executors, whenever making distribution hereunder to my Trustees, to do so at current market values, so that the assets comprising the fractional share hereby bequeathed will have values fairly representative of this trust's proportionate share of any appreciation or depreciation at the date or dates of distribution. All of the property devised and bequeathed under this Article 6 shall be held by my Trustees in trust to manage, invest, and reinvest the same and to hold as a separate trust fund upon the following trusts and for the following purposes, viz.:"

Phillips at least as often as quarterly during her life; give her an inter vivos power of appointment over up to "one-half of the trust fund determined as of the date of the creation of this trust"; give her a general power of appointment by will over the trust property; and add any trust property not so appointed to property held in trust under article 8 of the will.[5]

In addition to provisions already quoted or described in this opinion,[6] Phillips's will contains language which is designed to assure that the marital trust will qualify for the marital deduction. He provided that in the event of simultaneous death, his wife would be presumed to have survived him (except as to the distribution of certain real estate and certain tangible personal property). He denied to the trustees of the marital trust the power to allocate receipts between income and principal, a power otherwise available to his trustees.

The executors of Phillips's estate seasonably filed a Federal estate tax return in which an amount equal to the maximum marital deduction allowable to Phillips's estate was claimed as a deduction from the decedent's adjusted gross estate. An agent of the Internal Revenue Service assigned to audit the Federal estate tax return advised the Phillips executors that he disallowed a portion of the marital deduction claimed. The amount of the disallowance was determined by assuming that circumstance

---

[5] Article 8, which for the purposes of this case can be treated as creating a residuary trust, provides that after the payment of certain annuities, the net income and principal are to be paid to Phillips's widow and issue in the trustees' sole discretion. After the death of his wife and after all of his children have attained the age of twenty-one or died, the entire income is to be paid in equal shares to each child and the issue of any deceased child (or on appointment by will of such child in part to his or her spouse). The trust is to terminate on the death of the "last survivor" of the annuitants, Phillips's wife, his children, and spouses of children living at the testator's death to whom appointment of income had been made.

[6] These provisions already mentioned include the following: (a) The assets of the marital deduction trust must be qualifying assets. See fn. 4 above. (b) The income must be paid at least quarterly. (c) Mrs. Phillips has a general testamentary power of appointment. (d) Pursuant to the 1964 codicil, distributions must be made, using current market values, to satisfy Revenue Procedure 64-19. See 1964-1 C. B. 682.

which would lead to the imposition of the largest possible Massachusetts inheritance tax on the assets of the marital trust, that is, an appointment by Mrs. Phillips of the property in the marital trust to a single individual not closely related to Phillips.[7] The plaintiffs have preserved their rights of administrative appeal within the Internal Revenue Service. In turn, we are advised that representatives of the Internal Revenue Service are awaiting the results of this proceeding.

During the month following the examination report of the revenue agent this bill for declaratory relief was filed in the Probate Court for Essex County by the executors of the Phillips estate against Mrs. Phillips, the trustees under article 8 of the will and the Attorney General, who has submitted his rights. No trustee of the marital trust has yet been appointed. The plaintiffs sought a binding declaration, under G. L. c. 231A, whether any Massachusetts inheritance taxes which become payable with respect to future interests in the property held in the marital trust are to be borne by property in that trust or by the property held in trust under article 8 of the Phillips will. Mrs. Phillips filed an answer praying that the court decree that such Massachusetts inheritance taxes in respect of article 6 assets as may arise on her death should be borne by the property held under article 8. The article 8 trustees answered that declaratory relief was appropriate but took no position on the issue presented by the bill for declaratory relief. In their brief and argument before this court,

---

[7] The extent of the disallowance of the claimed marital deduction appears to have been arrived at by an agent of the Internal Revenue Service by applying the maximum inheritance tax rates which might be payable to the value of the assets to be placed in the marital trust, discounted to reflect Mrs. Phillips's life interest. Those maximum rates are the rates which would be appropriate if Mrs. Phillips were to appoint all the trust property to a Class D beneficiary, as defined in G. L. c. 65, § 1. Speaking generally, such a person is one who is not a lineal ancestor or descendant of the deceased, his spouse, or the spouse of a child, or other close relative of the deceased. We, of course, express no opinion on the merits of the adoption by the revenue agent of the "worst possible" State inheritance tax alternative. His position disregards both the Federal estate tax which would be attributable to the appointed property in Mrs. Phillips's estate and the prospect that the "worst possible" State inheritance tax alternative may in fact be better determined from the results of compromises of such taxes in similar situations.

however, the article 8 trustees have agreed that the burden of any inheritance taxes as to future interests in the marital deduction trust should be borne by the assets held by them under article 8.[8] The matter was submitted to the Probate Court on a statement of agreed facts and reserved and reported by the judge to the Appeals Court on the pleadings and the statement of agreed facts. We granted an application for direct review in this court. G. L. c. 211A, § 10.

The fundamental object in the construction of a will is to ascertain the testator's intention from the whole instrument, attributing due weight to all its language, considered in light of the circumstances known to the testator at the time of its execution, and to give effect to that intent unless some positive rule of law forbids. See *Fitts* v. *Powell,* 307 Mass. 449, 454 (1940); *Hill* v. *Aldrich,* 326 Mass. 630, 632 (1951). If a will is not ambiguous, extrinsic evidence to explain its terms is inadmissible (*Moffatt* v. *Heon,* 242 Mass. 201, 205 [1922]), even where the language involved has a legal consequence either not likely to have been understood by the testator (see *Harvard Trust Co.* v. *Frost,* 258 Mass. 319, 322 [1927]; *Mahoney* v. *Grainger,* 283 Mass. 189, 191-192 [1933]; *Agricultural Natl. Bank* v. *Schwartz,* 325 Mass. 443, 448 [1950]) or contrary to his intention expressed orally. See *Smith* v. *American Missionary Assn.* 240 Mass. 26, 29 (1921); *Boston Safe Deposit & Trust Co.* v. *Prindle,* 290 Mass. 577, 581-582 (1935). If, however, there is an ambiguity in a will, such as a conflict of terms, extrinsic evidence may be resorted to in order to show the circum-

---

[8] The position adopted by the trustees under article 8 is the product of a pragmatic analysis of what is likely to happen. They believe that Mrs. Phillips is likely to exercise, or fail to exercise, her powers of appointment under the marital trust in a way which will produce a relative tax benefit to the beneficiaries of the trust under article 8, if article 8 assets (and not the marital trust) must pay inheritance taxes on future interests under the marital trust. They reach this conclusion because of the harm to article 8 beneficiaries which would result from the loss of a portion of the maximum allowable marital deduction. Because all Federal estate taxes on the Phillips estate are payable from assets which would otherwise go into the trust under article 8, any increase in Federal estate taxes adversely affects the interests of beneficiaries of that trust. The article 8 trustees state that only if Mrs. Phillips should appoint to a Class D beneficiary would the State inheritance tax obligation exceed the increased Federal estate tax obligation which would result from the partial loss of the marital deduction.

stances known to the testator under which he viewed that ambiguous language. *Gould* v. *Chamberlain,* 184 Mass. 115, 121 (1903). *Mahoney* v. *Grainger, supra,* at 192. *Boston Safe Deposit & Trust Co.* v. *Prindle, supra,* at 582.

With these principles in mind, we turn then to a consideration of the Phillips will as a whole to ascertain whether he intended to take full advantage of the marital deduction and, if he did, how the apparent conflict with the tax apportionment provision in article 12 of his will should be resolved.

We believe that the Phillips will should be read as expressing an intention to take full advantage of the marital deduction. The will provides for the funding of the marital trust with "that fractional share of my residuary estate . . . which will equal the maximum marital deduction allowable in determining the Federal Estate Tax by reason of my death," reduced by the value of other property which qualifies for the marital deduction. This language standing alone shows that Phillips intended to have his estate utilize the maximum permissible marital deduction in computing the Federal estate tax payable on his death.[9] Other provisions in his will show that his attention was directed to compliance with various requirements of the Federal estate tax law relating to marital deductions.

---

[9] No authority here or elsewhere directly in point has come to our attention. Cases concerned with the imposition of death tax burdens where a marital deduction gift was involved are collected in Casner, Estate Planning, 1974 Supp. to Vol. II, pp. 1522-1534. In cases where the testator has referred to the marital gift in language related to the maximum marital deduction for Federal estate tax purposes, such as one-half or "50 percent of the value of the adjusted gross estate" (Int. Rev. Code of 1954, § 2056 [c], as amended through 26 U. S. C. § 2056 [c] [1970]) or the maximum marital deduction allowable, some courts have recognized a testamentary intention to take fullest possible advantage of the marital deduction (see, e.g., *Dodd* v. *United States,* 345 F. 2d 715 [3d Cir. 1965]; *Northwest Security Natl. Bank* v. *Welsh,* 203 F. Supp. 263, 268-269 [S. D. S. D. 1962]; *Estate of Haskell,* 58 T. C. 197 [1972]. Cf. *Davis* v. *Davis,* 289 Ala. 313, 320-322 [1972]; *Gesner* v. *Roberts,* 48 N. J. 379, 382 [1967]), and some have not. See, e.g., *Bauknecht* v. *Kellogg-Citizens Natl. Bank,* 49 Wis. 2d 392 (1971); *Estate of Hilliar,* 498 P. 2d 1237 (Wyo. 1972); *Pierpont* v. *Commissioner of Int. Rev.* 336 F. 2d 277, 283 (4th Cir. 1964), cert. den. 380 U. S. 908 (1965). Where the testator expressly provided for discretion in his executor to invade a marital trust for the payment of inheritance and estate taxes, the Tax Court recently concluded that the testator did not intend to afford his estate the maximum marital deduction. *Estate of Wycoff,* 59 T. C. 617 (1973).

While most of those provisions were related to the quali-fication of the trust under article 6 for the marital deduc-tion (and not to the maximization of that deduction),[10] they do show an intention to adjust the provisions of his will so as to meet what he clearly regarded as a desirable tax objective. From the timing and the nature of the changes' made by the codicil executed by Phillips in 1964, the inference is warranted that these changes were designed solely to conform the provisions of his will to the Federal tax requirements of Revenue Procedure 64-19.

The accomplishment of identifiable tax objectives may be an aid to the interpretation of a will (see *New England Trust Co.* v. *Faxon,* 343 Mass. 273, 276, n. 3, and 281 [1961]), and to the extent it is reasonably consistent with the language of the will and applicable legal principles, effect should be given to that intention. *State Tax Commn.* v. *Loring,* 350 Mass. 568, 571 (1966). The objective of achiev-ing the maximum allowable marital deduction is certainly identifiable in Phillips's will. There is no legal principle with which such an objective is inconsistent, and there is only one provision in Phillips's will with which that objective appears to be inconsistent.

In the view we take of this question, we reject the literal result that could be obtained by funding the marital trust with the amount necessary to obtain the maximum marital deduction as directed and then having inheritance taxes on future interests under the marital trust paid out of the marital trust. That result, if the present position of the Internal Revenue Service is correct, destroys the maximum marital deduction. The concept that the terms of the funding provision of the marital trust can be coördinated compatibly with the provision that certain inheritance taxes on future interests should be paid from that trust does violence to the precision and purpose of the funding provision, a provision by which the testator intended to obtain the maximum marital deduction allowable. These

---

[10] The requirement in the will (see fn. 4, *supra*) that the assets placed in the marital trust must be qualifying assets relates both to the maximization and to the qualification issues. See Int. Rev. Code of 1954, § 2056 (b) (2), as amended through 26 U. S. C. § 2056 (b) (2) (1970).

testamentary provisions are mutually repugnant and not reconcilable in any reasonable sense.[11] Cf. *Northeastern Pa. Natl. Bank & Trust Co.* v. *United States,* 360 F. Supp. 116 (M. D. Pa. 1973).

We turn next to the resolution of the conflict presented by the language of the Phillips will. Unlike the will considered in *Mazzola* v. *Myers,* 363 Mass. 625 (1973), the Phillips will contains no language which gives directions concerning the resolution of such a conflict. In undertaking to resolve the conflict we advert, as we may in light of the ambiguity, to additional facts which were known to Phillips at the time he executed his will in 1957. Phillips had substantial assets, and his wife's assets were comparatively negligible. From a memorandum prepared by his attorney prior to the execution of his will it appears that Phillips may have viewed his assets as having a value of approximately $6,000,000. That memorandum showed the consequences of the adoption of full marital deduction provisions in his will. His counsel explained orally the tax consequences of using the maximum Federal estate tax marital deduction.

Prior to the execution of Phillips's will, a will for Mrs. Phillips had been prepared. Phillips reviewed that will extensively in the course of its preparation. That will contained provisions for several trusts, not all of which necessarily would terminate at the same time. The will also contained a tax apportionment provision substantially the same as that which later appeared as article 12 of Phillips's

---

[11] We reject the alternative which would fund the marital trust with sufficient additional assets from the general estate so that the assets of the marital trust would equal the total of (a) the maximum marital deduction allowable and (b) the maximum amount of future interest inheritance taxes hypothetically payable. See *Estate of Haskell,* 58 T. C. 197 (1972), where the will of a New Jersey testator was construed as requiring the addition of the amount of a present inheritance tax to a marital trust designed to take fullest advantage of the marital deduction. An overfunding of the marital trust (a) would distort the testator's intention concerning the distribution of income during Mrs. Phillips's life, (b) would cause an increase in Mrs. Phillips's gross estate for Federal estate tax purposes contrary to the purpose often associated with the use of a marital deduction trust and a residuary trust and (c) in all practical likelihood would result in Mrs. Phillips's having an effective power to appoint assets (added to the marital trust to pay inheritance taxes but not so used) over which Phillips did not intend that she have such power.

will. See fn. 1 above. The second sentence of the tax apportionment provision — placing the burden of paying inheritance taxes on future interests in an established trust on the principal of that trust — was wholly appropriate in the context of Mrs. Phillips's will. That will had no marital deduction trust, and there was a possibility of inheritance taxes being payable as to certain trust interests long after the general assets of the estate had been distributed pursuant to the residuary clause in Mrs. Phillips's will.

When Phillips's will was prepared shortly after Mrs. Phillips's will was executed, the general administrative provisions of Mrs. Phillips's will were copied with modifications to adapt them to Phillips's will. It is clear, however, that the adverse Federal tax consequences of the tax allocation provisions of Mrs. Phillips's will as applied to Phillips's will were overlooked by counsel and in all reasonable likelihood were beyond detection by the client. Thus the testamentary conflict of provisions was created.

In order to resolve the conflict between the provisions of Phillips's will, our task is to ascertain and to carry out his over-all intent, rendering ineffective any conflicting provision in his will to the extent necessary in order to fulfil that over-all intent. See *Schaffer* v. *Wadsworth,* 106 Mass. 19, 24 (1870); *Williams* v. *Thacher,* 186 Mass. 293, 300 (1904); *Taylor* v. *Albree,* 309 Mass. 248 (1941); *Brummett* v. *Hewes,* 311 Mass. 142, 147 (1942); *Clark* v. *Boston Safe Deposit & Trust Co.* 315 Mass. 97, 100 (1943). We know from relevant extraneous evidence that Phillips had a large estate and his wife a comparatively small one. The situation cried out for the maximum utilization of the marital deduction.

On the other hand, there is no indication of any reason why Phillips would be seriously concerned about the allocation of inheritance taxes on future interests in the marital trust. He imposed the substantial obligation to pay all Federal estate and all other inheritance taxes on the general assets of his estate. The second sentence of article 12 of his will placed the obligation to pay future interest inheritance taxes on the marital trust property, but

only if they were "paid after the establishment of the trust." Thus the burden of future interest inheritance taxes was to fall on the marital trust only if those taxes were not paid (i.e., by compromise) before the marital trust was established.[12] The testator's indifference concerning the repository of the obligation to pay future interest inheritance taxes cannot fairly be permitted to destroy his clear and primary intent to utilize the marital deduction to its fullest. The intention expressed in the second sentence of article 12 must yield to the extent necessary to permit the achievement of the dominant tax goal of the will. In the circumstances we believe that the expressed intention to impose the obligation of future interest taxes on the marital trust, once established, must be wholly disregarded.

It would be a rare case in which a conflict of terms or an ambiguity in a will should be resolved by attributing to the testator an intention which as a practical matter is likely to benefit the taxing authorities and no one else. See *Old Colony Trust Co.* v. *Governors of the Belleville Gen. Hosp.* 355 Mass. 776, 780 (1969); *Strange* v. *Powers,* 358 Mass. 126, 133 (1970); *Mazzola* v. *Myers,* 363 Mass. 625, 638-639 (1973). A testator who wishes to make a gift to his State and country can do so directly, and he should not be presumed to have intended such a gift by indirect means. Although "[t]he achievement of the purposes of the marital deduction is dependent to a great degree upon the careful drafting of wills" (*Jackson* v. *United States,* 376 U. S. 503, 511 [1964]), the intention of a testator must be given effect where possible. If that intention can be discerned from the will, using normal principles of construction, it should not be thwarted by placing legalistic over-reliance on an omission of counsel in dealing with a subject of such complexity.

---

[12] The dilemma cannot be resolved by the payment of all future interest inheritance taxes from the general (article 8) assets of the Phillips estate before the marital trust is established because the certainty of qualification for the marital deduction must be established as of the date of death. *Jackson* v. *United States,* 376 U. S. 503, 508 (1964). At the time of Phillips's death it was, of course, not certain that inheritance taxes on future interests would be paid from his general estate before the marital trust was established.

A final decree shall be entered in the Probate Court declaring that all inheritance taxes at any time imposed with respect to future interests in the trust under article 6 of the will of Stephen Phillips are to be paid from the assets of the estate passing under article 8 of his will and not from the trust under article 6 of his will.

*So ordered.*