IN THE MATTER OF THE ESTATE OF
G. LEONARD ERICSON, DECEASED.

Superior Court of New Jersey
Chancery Division

Decided December 18, 1974.

*Mr. Harrison F. Durand* for plaintiff (*Messrs. Durand, Twombly & Imbriaco,* attorneys).

Mr. *Alfred C. Clapp* for defendant Helen Ericson (*Messrs. Clapp & Eisenberg,* attorneys).

Mr. *Woodruff J. English* for defendants Diane Franklin, Pauline Klepper, William ·Klepper, John Edward Ericson, John E. Ericson, Jr., Jane Ericson and Lynn Franklin Seward (*Messrs. McCarter & English,* attorneys).

FURMAN, J. S. C. Construction of the will of G. Leonard Ericson is sought. Two clauses defining the marital share are in conflict. Plaintiff executor instituted this declaratory judgment action. Adversary parties are the widow Helen Ericson and several of testator's nephews and nieces and their children, contingent life beneficiaries and remaindermen of nonmarital and *inter vivos* trusts. The Ericsons were childless.

Ericson died on December 4, 1969. His will dated March 22, 1967 was admitted to probate. He executed an irrevocable *inter vivos* trust on March 7, 1967 and an earlier will on March 9, 1967. His widow is the life beneficiary and his nephews and nieces and their children are remaindermen of the *inter vivos* trust. The corpus of the *inter vivos* trust was $1,069,250 when created and $1,598,722.86 on the date of his death. His estate passing under his will was valued at $2,020,620.49 on the date of his death.

Internal Revenue Service has included the *inter vivos* trust within Ericson's adjusted gross estate in accordance with the presumption that a trust within three years of death is in contemplation of death. 76 *Stat.* 1052; 26 *U. S. C. A.* § 2035(b). Ericson was 75 and in apparent good health on March 7, 1967. Malcolm Savage, plaintiff's trust officer who dealt with him, testified that in his opinion Ericson expected to survive many years, specifically more than three years.

Article IV 1(a) of the will admitted to probate defines the marital share as follows:

If my wife survives me, I give and bequeath to her "PART A" of my residuary estate which shall be that fraction of my entire residuary estate which shall secure for my estate the maximum marital deduction allowable under the Federal Estate tax law. The numerator of this fraction shall be one-half of my adjusted gross estate (as defined in the Internal Revenue Code, but after excluding the value of all property passing or having passed outside, this Will except joint tenancies) less the value of all property finally allowed as a marital deduction for property passing to my wife, other than property passing under this Article, and the denominator shall be the value of my entire residuary estate, all based on values as finally determined for Federal Estate Tax purposes.

The maximum marital deduction based on an adjusted gross estate including the *inter vivos* trust is $1,809,671.67. If the *inter vivos* trust is excluded from the numerator of the fraction, as literally provided in the will, the marital deduction would be $1,010,310.25, a diminution of almost $800,000 in the widow's outright share, and the federal estate tax would be increased by about $284,000.

The earlier will, executed two weeks before the will admitted to probate and two days after the *inter vivos* trust, limited the parenthetic phrase in the marital bequest to "as defined in the Internal Revenue Code." It is otherwise identical to the will admitted to probate, except for a specific bequest of $1,000 in the latter. The language "but after excluding the value of all property passing or having passed outside this Will except joint tenancies" is additional language in the will admitted to probate.

In construing a will testator's intent is the cornerstone. The search for testator's intent may reach out to what he would have done if he had envisioned the present inquiry. *Fidelity Union Trust Co. v. Robert,* 36 *N. J.* 561, 565–566 (1962); *Bank of New York v. Black,* 26 *N. J.* 276, 287 (1958); *Morristown Trust Co. v. McCann,* 19 *N. J.* 568, 572 (1955); *In re estate of Hays,* 128 *N. J. Super.* 460, 465 (Cty. Ct. 1974).

According to the witnesses, Ericson lived simply. His wealth was derived from inheritance. He retained stocks which had huge accretions in value. He was not a lawyer

and had no special business or financial training or experience. He sought the assistance of Savage, plaintiff's trust officer, in the preparation of his will. He never saw the scrivener of the will until the day of its execution and gave him no instructions.

Ericson's testamentary intent communicated to Savage was straightforward. He wanted two-thirds of his estate to go to his side of the family, his nephews and nieces, and one-third to his wife's side of the family, her only nephew. There was no discussion whatsoever about taxes or the marital deduction.

Within this framework Savage conceived the estate plan. His intent was to maximize the marital deduction allowed by 80 *Stat.* 872, 26 *U. S. C. A.* § 2056. The two-thirds, one-third division of the estate was roughly worked out by providing for testator's nephews and nieces as remaindermen of the *inter vivos* trust, which was somewhat more than one-third of testator's assets, and of the nonmarital trusts, which were to bear the estate and inheritance tax burden according to a provision of the will as follows: "All inheritance, estate and succession taxes (including interest and penalties thereon) payable by reason of my death shall be paid out of and be charged generally against the principal of my residuary estate other than Part A, without reimbursement from any person."

Presumably the widow would provide for her nephew by a bequest of Part A, or approximately one-third of testator's assets. If testator survived her, her nephew would be life beneficiary of the *inter vivos* trust and of the residuary estate with the remainder to his heirs.

According to the scrivener, he received instructions from Savage or Mrs. Ericson between March 9 and March 22, 1967 to draft a new will including the specific bequest of $1000. He received no other instructions and cannot account for the addition of the clause "but after excluding the value of all property passing or having passed outside this Will

except joint tenancies." Savage also recalled nothing about the clause in question.

Although the search for testator's intent is baffling under the testimony, a conclusion can be and is arrived at that, in accordance with common human impulses and motivations, he would have wanted his wife to enjoy the maximum marital deduction and his estate to suffer the least burden of taxes. *Gesner v. Roberts*, 48 *N. J.* 379, 381 (1967); *In re Burnett*, 50 *N. J. Super.* 482, 498 (Cty. Ct. 1958); *Case v. Roebling*, 42 *N. J. Super.* 545, 568 (Ch. Div. 1956); *In re estate of Marks*, 129 *N. J. Super.* 276, 285 (Cty. Ct. 1974); *Estate of Haskell*, 58 *T. C.* 197 (1972), aff'd without opinion (3 Cir. 1973); *Dodd v. United States*, 345 *F.* 2d 715 (3 Cir. 1965); *Putnam v. Putnam*, 366 *Mass.* 261, 316 *N. E.* 2d 729 (Sup. Jud. Ct. 1974).

That construction of the will can be accomplished only by disregarding the clause defining the numerator of the fraction constituting the marital share and also by circumventing testator's express intent to divide his estate two-thirds to his side of the family, one-third to his wife's. If a maximum marital deduction of $1,809,671.67 is allowed, the share of testator's assets passing eventually to his wife's nephew or his heirs would be over one-half.

The dominant intent to secure the maximum marital deduction is conspicuous in the general provision of Article IV 1(a). The limiting language, which was unaccountably added in the second will of March 1967, was of little significance unless the *inter vivos* trust became part of the adjusted gross estate under the contemplation of death rule. Then its literal effect was momentous as stated, reducing the marital share by $800,000, increasing the federal estate tax by $284,000.

Internally the clause in question is inconsistent in intent with the immediately succeeding as well as immediately preceding clause of Article IV 1(a). To accomplish the maximum marital deduction standard will drafting practice is to diminish the adjusted gross estate by the value of all property

qualifying for the marital deduction passing outside the will, such as joint tenancies and tenancies by the entirety. The immediately succeeding clause so provides: "* * * less the value of all property finally allowed as a marital deduction for property passing to my wife, other than property passing under this Article." A standard form admitted in evidence is identical.

Ericson's intent to divide his estate two-thirds to his side of the family and one-third to his wife's is held to have been subordinate to his intent to maximize the marital deduction and to minimize estate taxes. A two-thirds, one-third division would have been realized if he had survived the creation of the *inter vivos* trust by three years or more, as he no doubt anticipated. But it is fair to conclude that neither testator, the trust officer nor the scrivener adapted the provisions of the will defining the marital share to implement that distribution plan in the eventuality of testator's death within three years of the creation of the *inter vivos* trust.

In construing a will a court may excise words whose use was inadvertent, mistaken and not intended beyond reasonable doubt. The testator's dominant intent will be enforced notwithstanding doubtful and conflicting provisions in the will. *Hackensack Trust Co. v. Bogert*, 24 *N. J. Super.* 1, 8–9 (App. Div. 1952); *Wilson v. Flowers*, 58 *N. J.* 250 (1971); *In re Conway*, 50 *N. J.* 525, 527 (1967); *In re Cook*, 44 *N. J.* 1, 8 (1965); *Gluckman v. Roberson*, 116 *N. J. Eq.* 531, 537 (E. & A. 1934); *Fink v. Harder*, 111 *N. J. Eq.* 439, 441 (E. & A. 1932); *Bottomley v. Bottomley*, 134 *N. J. Eq.* 279, 291 (Ch. 1944); *Camden Trust Co. v. Birch*, 131 *N. J. Eq.* 542, 546 (Ch. 1942); *Swetland v. Swetland*, 100 *N. J. Eq.* 196, 207 (Ch. 1926).

The Ericson will is construed to excise the words in Article IV 1(a), "but after excluding the value of all property passing or having passed outside this Will except joint tenancies," as inadvertent, inconsistent and in derogation of tes-

tator's dominant intent. The marital share is fixed at $1,809,671.67.

Remaining questions are the federal estate and state inheritance tax incidence on the Ericson estate and *inter vivos* trust. According to the provision of the will already quoted, the nonmarital trusts were to be charged with the tax burden. The corpus of those is insufficient to meet all taxes. Testator's express intent was not that taxes be paid out of the residuary estate but out of the residuary estate other than the marital share. In view of its insufficiency, federal estate taxes must be allocated to the *inter vivos* trust as well as to the nonmarital trusts, preserving the maximum marital deduction. That result is in accordance with the Estate Tax Apportionment Act, *N. J. S. A.* 3A:25–33 (ii), in the absence of directions of the testator to the contrary, and with numerous decisional authorities. The widow's share has no taxable valuation under the marital deduction provisions of the federal Estate Tax Law. *Gesner, Case, Marks* and *Haskell,* all *supra.*

As to state inheritance taxes pursuant to *N. J. S. A.* 54:33–1 *et seq.* the incidence of such taxes is on the transferee. Apparently no one responsible for the Ericson will foresaw that the corpus of the nonmarital trusts would fall short of the estate and inheritance tax obligation. No express language exempts the marital share after the exhaustion of the nonmarital trusts or shifts the burden to the *inter vivos* trust.

Transferees of *inter vivos* trusts within the contemplation of death rule or otherwise taxable are subject to a proportionate allocation of the state inheritance tax. *Palmer v. Palmer,* 135 *N. J. Eq.* 516 (Ch. 1944); *Morristown Trust Co. v. Childs,* 128 *N. J. Eq.* 524, 527 (Ch. 1940); *Commercial Trust Co. v. Millard,* 122 *N. J. Eq.* 290, 295 (Ch. 1937).

To charge the marital share with its proportionate allocation of the state inheritance tax would defeat the attainment of the maximum marital deduction under federal Es-

tate Tax Law and impose an additional federal estate tax on the amount by which the marital share was thus diminished. Such result is contrary to testator's dominant intent and is rejected.

Judgment is rendered that the marital share fixed at $1,809,671.67 is exempt from any obligation to pay federal estate and state inheritance taxes.