HANS F. LOESER & another,[1] trustees, vs. NANCY ORR TALBOT & others.[2]

Middlesex. December 4, 1991. - April 7, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Trust*, Taxation, Marital deduction trust, Reformation. *Jurisdiction*, Mistake, Reformation.

This court ordered reformation of a trust instrument to correct a scrivener's error transposing two clauses, where the reformation was necessary to embody the settlor's intentions, clear on the face of the instrument, that the terminable interest trust qualify for the marital deduction under § 2056(b)(7) of the Internal Revenue Code and that the trust property would pass to his issue. [365-367]

CIVIL ACTION commenced in the Middlesex Division of the Probate and Family Court Department on December 21, 1990.

The case was reported to the Appeals Court by *Sheila E. McGovern*, J., on a statement of agreed facts. The Supreme Judicial Court granted a request for direct review.

*Stefanie D. Cantor* (*Robert L. Cowdrey* with her) for the plaintiffs.

*Albert M. Fortier, Jr.*, guardian ad litem.

*Philip H. Suter* (*Erik Hestnes* with him) for Nancy Orr Talbot & others.

LIACOS, C.J. The plaintiffs, trustees of The Rudolph L. Talbot Family Trust - 1983 (trust), filed a complaint for reformation of the trust created by the late Rudolph L. Talbot.

---

[1]Nancy Orr Talbot.

[2]Nancy Orr Talbot and Hans Loeser, as coexecutors of the estate of Rudolph L. Talbot, and all known and all unascertained beneficiaries of the trust.

The action was brought in the Probate and Family Court Department of the Trial Court in Middlesex County. The complaint prayed that two powers of appointment granted to the settlor's spouse under Article Fifth of the trust be interchanged to correct an alleged scrivener's error which resulted in the powers having been inadvertently reversed. According to the complaint, the alleged error could result in double taxation under Federal estate tax laws, a result which would produce a tax liability of approximately $400,000.[3] The beneficiaries of the trust, who were named as defendants, assented to the proposed reformation.[4] Because a question exists whether the Internal Revenue Service will abide by a decision of a lower State court, see *Commissioner of Internal Rev.* v. *Estate of Bosch,* 387 U.S. 456, 465 (1967), and, because the parties are in agreement as to the facts, a judge of the Probate Court reserved and reported the case without decision to the Appeals Court pursuant to G. L. c. 215, § 13 (1990 ed.), and Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We granted the parties' application for direct appellate review. We order the grant of the prayers for reformation.

1. *Background.* On August 19, 1983, Rudolph L. Talbot, as settlor, as part of his estate plan, executed a written instrument of trust naming his wife, Nancy Orr Talbot, and his attorney, Hans F. Loeser, as trustees. Article Third of the trust provided that, if the settlor predeceased his wife, the trust thereupon would divide into three sub-trusts: a marital trust under Article Fourth, a terminable interest trust under Article Fifth, and a family trust under Article Sixth.

Rudolph Talbot died on October 21, 1987, and was survived by his wife. The trust thereupon divided into three sub-

---

[3]The complaint also alleges the error would subject the estate to greater liability under Massachusetts estate tax laws.

[4]A guardian ad litem was appointed to represent the minor and unascertained beneficiaries. The guardian ad litem has assented to the proposed reformation. Notice of the proposed reformation was served on the Internal Revenue Service. The Service did not file an appearance.

trusts pursuant to Article Third. At issue in this case is the terminable interest trust established in Article Fifth.

Pursuant to the terms of Article Fifth as written, the trustees are to pay the income from the terminable interest trust to Mrs. Talbot quarter-annually (or more frequently) during her lifetime. In addition, the trustees may, in their discretion, distribute some or all of the trust principal to Mrs. Talbot as well. The trust is to terminate upon Mrs. Talbot's death, whereupon any accrued but unpaid income will be subject to Mrs. Talbot's special testamentary power of appointment, which is limited to issue, and any remaining principal will be subject to her general testamentary power of appointment.

The specific provisions of the Article Fifth trust that are at issue are the special and general testamentary powers of appointment granted to Mrs. Talbot over the trust income and principal respectively. The trustees contend that the settlor actually intended to grant his wife a general testamentary power of appointment over the trust income and a special power of appointment, limited to issue, over the trust principal. However, the trustees contend, due to a scrivener's error the powers of appointment are reversed in the trust instrument. The trustees contend that the error is apparent when the purposes of the terminable interest trust are considered.

The trustees argue that the purpose of the Article Fifth trust was to qualify the trust property for the marital deduction under § 2056(b)(7) of the Internal Revenue Code (Code) as well as "to keep the trust property within the family line." Under § 2056(b)(7) of the Code, qualifying terminable interest property (QTIP) is eligible for a marital deduction in the estate of the settlor if the settlor's executors so elect. See 26 U.S.C. § 2056(b)(7). If the QTIP election is made, and the marital deduction is thus taken in the settlor's estate, the trust property must then be included in the estate of the surviving spouse for Federal estate tax purposes. See 26 U.S.C. § 2044.

In order to qualify for QTIP treatment under § 2056, a terminable interest trust must provide the surviving spouse a "qualifying income interest for life." See 26 U.S.C. §

2056(b)(7)(B). This requirement is met when the spouse is entitled to all the income from the trust property, payable annually or more frequently, and when other requirements are met. 26 U.S.C. § 2056(b)(7)(B)(ii).

The trustees assert that the settlor intended to grant Mrs. Talbot a general power of appointment over the trust income in order to ensure that the trust would meet § 2056(b)(7)'s requirement that Mrs. Talbot be entitled to all the income from the trust property. According to the trustees, a general power of appointment over accumulated income would have fulfilled this requirement by ensuring that, in addition to receiving quarterly payments pursuant to Article Fifth, Mrs. Talbot would be entitled to appoint in her will any income that might be undistributed at her death (the so-called "stub" income).

The trustees further contend that the settlor intended to grant Mrs. Talbot a special power of appointment over the trust principal in order to ensure that the trust property would not be included in Mrs. Talbot's estate unless the QTIP election was made in Mr. Talbot's estate. The trustees argue that only a special power of appointment would achieve this objective because, under § 2041 of the Code, a general power of appointment would render the property includible in Mrs. Talbot's estate regardless of how the property was treated in Mr. Talbot's estate.

The trustees argue it is clear that the intention of the settlor was to minimize tax liability and also to limit the surviving spouse's power of appointment only to be exercised in favor of their issue. Thus, they request the court reform the trust instrument and reverse the powers of appointment granted to Mrs. Talbot under Article Fifth. The trustees assert that, if the trust is not reformed, the settlor's estate plan will be thwarted and the trust property will be subject to nearly $400,000 in otherwise avoidable taxes.[5]

---

[5]The guardian ad litem summed up the effect of the trust as presently written as follows: "It would be extraordinary indeed for Mr. Talbot to create a terminable interest trust as written because it would have the worst of all tax worlds: the property might fail to qualify for the marital

2. *Discussion.* This court has held that, where a settlor executes a trust instrument which, because of the mistake or inadvertence of the scrivener, fails to embody the settlor's intentions, the trust instrument may be reformed. *Berman* v. *Sandler,* 379 Mass. 506, 510 (1980). Such a mistake will be reformed upon " 'full, clear, and decisive proof' of mistake." *Mickelson* v. *Barnet,* 390 Mass. 786, 792 (1984). *Berman* v. *Sandler, supra.*

It is clear from the face of the trust instrument itself that a major aspect of the settlor's intent in establishing the terminable interest trust under Article Fifth was to qualify for the marital deduction under § 2056(b)(7) of the Internal Revenue Code. The fact that, throughout the trust instrument, the Article Fifth trust is referred to as a "terminable interest trust," as well as the fact that the trust generally appears to meet the requirements of § 2056, supports this conclusion. Additionally, the provisions of Article Twelfth also suggest that the terminable interest trust was created to qualify for the marital deduction under § 2056. Pursuant to Article Twelfth, the terminable interest trust is to be funded only with assets that qualify for the marital deduction. Article Twelfth also provides that the trustees are authorized to manage the terminable interest trust property in a manner that ensures that the trust qualifies for the marital deduction. Based on these provisions, as well as the structure of the terminable interest trust itself, we are confident that the settlor created the terminable interest trust in order to qualify for the marital deduction under § 2056.

The trust document shows on its face that the powers of appointment granted to Mrs. Talbot under Article Fifth were an integral part of the settlor's plan to qualify the trust for the marital deduction. Unlike other Articles of the trust,

---

deduction in his estate because he did not give Mrs. Talbot a general power of appointment over the accrued income remaining at her death; and yet the property would be included in her estate because of her general power of appointment over principal. Such a plan would simply not make sense. Just from the face of the document it appears that there was a mistake."

wherein Mrs. Talbot is granted only one type of power of appointment over both principal and income, only Article Fifth grants her differing powers of appointment over principal and income respectively. We are convinced that, in part, the settlor intended these powers of appointment to achieve specific tax consequences. The general power of appointment, which the settlor intended to pertain to the trust income, was a prudent measure to ensure that the trust would qualify for the marital deduction.[6] The special power of appointment, which the settlor intended to pertain to the trust principal, was a necessary complement to the otherwise qualifying terminable interest trust, as it served to ensure that the trust property would only be included in Mrs. Talbot's estate if the QTIP election was made in Mr. Talbot's estate.

Additionally, we are also convinced that this is not a situation in which the settlor intended the actual language contained in the trust instrument but simply misunderstood its legal effect. Cf. *Coolidge* v. *Loring*, 235 Mass. 220, 224 (1920); *Markell* v. *Sidney B. Pfeifer Found., Inc.*, 9 Mass. App. Ct. 412, 439-440 (1980). Rather, based on the fact that, if the powers of appointment are simply reversed, the trust instrument implements a complex estate plan, whereas, absent reformation, the powers of appointment thwart an otherwise coherent plan, we are confident that the error was, as the parties allege, due to the inadvertence of the scrivener.[7] This conclusion is buttressed by the fact that the special power of appointment that Mrs. Talbot will possess if the trust is reformed will serve additional estate planning objectives unrelated to tax planning. Specifically, the special power of appointment will ensure that the trust principal

[6]Although such a provision may not be necessary, see *Estate of Howard* v. *Commissioner*, 910 F.2d 633 (9th Cir. 1990) (holding that surviving spouse need not be granted a general power of appointment over the so-called "stub" income), the inclusion of the general power of appointment does reflect prudent estate planning. See 5 A.J. Casner, Estate Planning § 17.8, at 235 n.256a (5th ed. 1983).

[7]Although we need not rely on it, we note that the drafter has admitted his error in an affidavit made part of the record.

passes only to the Talbots' issue. The trust instrument as a whole reveals that this goal was equally as important to the settlor as was his goal of minimizing estate taxes.[8]

We conclude that the powers of appointment granted to Nancy Orr Talbot in Article Fifth of The Rudolph L. Talbot Family Trust - 1983 should be reversed so that Nancy Orr Talbot will possess a general testamentary power of appointment over the income from the terminable interest trust and a special power of appointment, limited to issue, over the terminable interest trust principal. In reaching this conclusion, we pass no judgment on the actual tax implications of the trust as reformed. We simply conclude that the reformation is necessary to effectuate the actual intent of the settlor. The case is remanded to the Probate and Family Court for entry of a judgment of reformation consistent with this opinion.

*So ordered.*

---

[8]The settlor's intent to ensure that the trust property pass to his issue is reflected in several articles of the trust. For example, pursuant to Article Sixth, the settlor's wife may only appoint the property of the family trust among the Talbots' issue. Similarly, under Article Fourth, any property that is not effectively appointed by Mrs. Talbot pursuant to the power of appointment granted to her in that article is to be added to the family trust under Article Sixth.