Shawmut Bank, N.A. *v.* Buckley.

SHAWMUT BANK, N.A., & others,[1] executors,[2] vs. JOSEPH D. BUCKLEY, trustee,[3] & others.[4]

Norfolk. January 12, 1996. - May 17, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & FRIED, JJ.

*Will,* Construction. *Devise and Legacy,* Power of appointment, Taxes. *Trust,* Reformation, Mistake.

Declaratory relief was a remedy appropriately to be granted to executors of a will and the trustee of a pour-over trust under the will with respect to the construction of a provision of the will in connection with the possible application of Federal estate tax provisions. [709-710]

A provision in a will was construed as denying any general power of appointment to a surviving spouse acting as a trustee with respect to nonmarital deduction assets that would pour over into the trust upon the trustee's death, in order to effectuate the testator's clear intention to minimize Federal estate taxes. [710-715]

CIVIL ACTION commenced in the Norfolk Division of the Probate and Family Court Department on November 4, 1994.

The case was reported to the Appeals Court by *Christina L. Harms,* J., on a statement of agreed facts. The Supreme Judicial Court granted a request for direct review.

*Karin Blake* for the plaintiffs.

*Thomas M. Barron* for Joseph D. Buckley, individually.

---

[1]Joseph D. Buckley and John R.D. McClintock.

[2]Of the will of Mary A. Buckley.

[3]Of the Joseph D. Buckley Revocable Trust and individually.

[4]Mary Angela Whitcomb; Preston Xavier Whitcomb; Wilton A. Whitcomb, Third; Randi Lynn Whitcomb; Jennifer Ann Whitcomb; Joseph B. Whitcomb; Joseph B. Whitcomb, Jr.; Kelly M. Whitcomb; Juanita Ann Stagnone; Joseph T. Stagnone, Jr.; Mary K. Stagnone; Suzanne T. Stagnone; Juanita M. Wurster; Asia Rea Wurster; Chole Marie Wurster; persons unborn; Missionary Society of St. James the Apostle, Inc.; St. Joseph's College; Propagation of the Faith of Boston, Inc.; Catholic Charities of Maine; Ken-a-Set Association for the Retarded, Inc.; Perkins School for the Blind; St. Anthony's Shrine; St. Camillus Nursing Home, Inc.; and the Attorneys General of the Commonwealth and the State of Maine.

*Helen H. Stewart* (*Edith C. Howe* with her) guardian ad litem for minor defendants and persons unborn or unascertained.

*Christopher T. Carlson,* guardian ad litem for minor defendants and persons unborn or unascertained.

FRIED, J. In this action, the parties seek a determination under the will of Mary A. Buckley (Mary) concerning the power of her husband over the nonmarital deduction share of Mary's estate. The Probate and Family Court reported this case to the Appeals Court without a decision, and we granted the plaintiffs' application for direct appellate review.

## I

In paragraph four of Mary's will dated August 29, 1970, she bequeathed to her husband, Joseph D. Buckley (Joseph), "an amount equal to fifty per cent of the value of [her] adjusted gross estate as finally determined for federal estate tax purposes . . . but only to the extent that such interests are included in determining my gross taxable estate and qualify for the marital deduction for federal estate tax purposes."[5] These assets are referred to as the marital deduction share. In paragraph four, she also directed her executors to "hold and invest the remaining, rest and residue of my property and accumulate interest therefrom until the decease of my said husband, and upon his death shall pay over the principal and all accumulations of income to that person or those persons who are then serving as the Trustee or Trustees under a certain instrument of revocable trust heretofore executed by my said husband and designated as the Joseph D. Buckley Revocable Trust to be added to the Residuary Share therein provided and held and administered in accordance with the terms and conditions declared in said instrument and any amendments thereto."[6] The residuary assets, placed in a nonmarital deduction trust, were subject to Federal estate taxes at the time of Mary's death.

---

[5] This portion of her bequest was not taxed at the time of Mary's death because § 2056 of the Internal Revenue Code (26 U.S.C. § 2056) allowed for a deduction of up to fifty per cent of the adjusted gross estate.

[6] If the Joseph D. Buckley Revocable Trust was not in existence at the time of Mary's death, paragraph six of her will provided:

"I . . . direct that the principal and accumulations on the residue of my estate . . . shall be held and administered in exactly the same

Joseph had established the Joseph D. Buckley Revocable Trust on April 29, 1970, four months before Mary executed her will.[7] The revocable trust provided generally that Mary and Joseph's two daughters, Mary Angela and Juanita, would receive equal shares of all the assets in the trust after their parents' deaths. It is this revocable trust that Mary incorporated in her will.

Mary died on January 29, 1973. On June 5, 1973, Joseph amended his revocable trust. Among other changes, he directed that at his death the remaining trust property shall be divided so that 60% would be held in trust for Mary Angela and her children and that 40% would be held in a separate trust for Juanita and her children. In addition, Joseph revised the list of charitable legacies by changing the charities themselves and the amounts to be paid to the respective charities at his death. On August 11, 1994, Joseph amended his revocable trust a second time. He again altered the list of charitable legacies. Joseph is alive today.

· The plaintiffs, the executors of the will of Mary A. Buckley, brought this action in the Probate and Family Court seeking instructions concerning the construction of the will.

---

manner and upon the same trusts prescribed for the Residuary Share in said instrument of revocable trust, as amended, and by the same trustees or successors therein named who are to serve hereunder . . . and for that purpose only I do hereby incorporate said instrument of · revocable trust, as amended by reference into this my last will."

[7]Joseph's revocable trust provided for the division of his assets into two parts if he should predecease Mary:

"One part shall be known as the Mary A. Buckley Marital Share and shall consist of a sum equal to one-half of the Donor's adjusted gross estate, as defined by the Federal Revenue Law, less the value of any other property not part of the trust fund but which is includable in the gross estate of the Donor for Federal Estate Tax purposes and which has passed to his said wife under the Donor's will or in any form of survivorship, life insurance, transfer, or any other manner, provided that property interest is a deductible item under the Federal marital deduction provision."

The second part would consist of the remainder of his estate and the trustees were directed to hold the remainder in a separate discretionary trust for Mary's benefit and at her death to distribute it as he provided for in his trust.

In his answer, Joseph sought a declaration of his rights under Mary's will. See G. L. c. 231A, § 1 (1994 ed.). The reason for their concern is that the last phrase of paragraph four of Mary's will, reading "any amendments thereto," may grant Joseph a general power of appointment over the assets in the nonmarital deduction trust, thereby subjecting those assets to adverse Federal tax consequences. The guardian ad litem representing the minor and unborn issue of Juanita argues that these words were inadvertently carried over from other provisions of Mary's will and should be eliminated from the will altogether. Joseph and the guardian ad litem representing the minor and unborn issue of Mary Angela, on the other hand, argue that the words meant to give Joseph a limited power of appointment, permitting him to select only among the parties named in his revocable trust as it existed when Mary established her will or, at the latest, when Mary died.[8] A Probate Court judge adopted the parties' statement of agreed facts and reported this case to the Appeals Court pursuant to G. L. c. 215, § 13 (1994 ed.), and Mass. R. Civ. P. 64, 365 Mass. 831 (1974), without a decision.

## II

### A

We first must determine whether it is appropriate for the court to decide the merits of this case. "We have regularly recognized the appropriateness of granting declaratory relief to fiduciaries seeking instructions concerning the manner in which an instrument making a donative disposition should be construed in connection with the possible application of Federal estate tax provisions" (citations omitted). *First Agric. Bank* v. *Coxe*, 406 Mass. 879, 882 (1990). See *Sears* v. *Childs*, 309 Mass. 337, 349-350 (1941) ("it is as well to answer [the] inquiry as to invite a return of the case to this court with the same question by not answering it now"). Here, the parties explain that the current uncertain state of Mary's will has an

---

[8]The plaintiffs remain neutral as to which construction Mary intended. See *Watson* v. *Erickson*, 276 Mass. 185, 187 (1931) (plaintiff who brings action for instructions precluded from filing brief supporting either one of alternative instructions suggested). In addition, the Internal Revenue Service is not a party in this action and according to the plaintiffs' brief has not been notified of it.

impact on their present decision-making. The executors of Mary's will claim that if we do not provide them with a definitive construction of the troubling language in Mary's will, they will be unable to fulfil their present duties. For example, Mary's executors must plan for the income tax consequences that will affect her estate at Joseph's death and these considerations will influence their current investment strategy. Likewise, Joseph claims that unless the issue is decided, he will be unable to arrange his affairs prior to his death in a manner that will accomplish his intentions. See *Billings* v. *Fowler*, 361 Mass. 230, 234 (1972) ("estate planning interest is sufficient to permit declaratory relief").

In addition, the construction of a testamentary instrument "clearly turns on questions of State law," *Dana* v. *Gring*, 374 Mass. 109, 113 (1977), and it is appropriate to decide this case on facts agreed on by the parties "[b]ecause a question exists whether the Internal Revenue Service will abide by a decision of a lower State court, see *Commissioner of Internal Rev.* v. *Estate of Bosch*, 387 U.S. 456, 465 (1967)," *Loeser* v. *Talbot*, 412 Mass. 361, 362 (1992). See *Berman* v. *Sandler*, 379 Mass. 506, 509 (1980). For these reasons, we reach the merits of this case.[9]

### B

The sole issue concerns the construction of the last phrase of paragraph four of Mary's will that reads "any amendments thereto." "The fundamental object in the construction of a will is to ascertain the testator's intention from the whole instrument, attributing due weight to all its language, considered in light of the circumstances known to the testator at the time of its execution, and to give effect to that intent unless some positive rule of law forbids." *Putnam* v. *Putnam*, 366 Mass. 261, 266 (1974). See G. L. c. 191, § 1A (2) (1994 ed.) ("[t]he intention of a testator as expressed in [her] will shall control the legal effect of [her] dispositions . . . .");

---

[9]The guardian ad litem for Juanita's issue points out that the will as drafted makes no provision for the issue of a deceased child of Juanita or Mary Angela and that the trust as drafted violates the rule against perpetuities. Because these issues are not now presented and may never have to be addressed if Mary's grandchildren survive until the termination of the trust, and because these issues do not require a resolution by the State's highest court, we do not reach them now.

*Sears, supra* at 344; *Fitts* v. *Powell,* 307 Mass. 449, 454 (1940). The parties all agree and convincingly argue that Mary's will was obviously written with tax considerations in mind and was a standard instrument in many ways for accomplishing estate tax minimization. For example, Mary's will specifically bequeathed to Joseph the maximum amount allowable as a marital deduction and prohibited the funding of the marital deduction share with assets that would not qualify for the marital deduction or not be part of the taxable estate. Her will also contains provisions designed to avoid the estate tax pitfalls encountered by the litigants in *Pastan* v. *Pastan,* 378 Mass. 148 (1979); *First Nat'l Bank* v. *First Nat'l Bank,* 375 Mass. 121 (1978); *Babson* v. *Babson,* 374 Mass. 96 (1977); and *Putnam, supra.*[10] And this court has often recognized that "[i]nherent in the provisions of [a] will is the intent that no general provision should be applied to produce a Federal estate (or [generation skipping transfer]) tax result that would solely benefit the Federal tax gatherers." *First Ágric. Bank, supra* at 883. See *Putnam, supra* at 268-270; *Mazzola* v. *Myers,* 363 Mass. 625, 638-639 (1973).

Acknowledging Mary's clear intention to minimize the amount of estate taxes paid, we are faced with a conflict between that goal and the language of her will. To appreciate this conflict, it is necessary to understand some basic estate planning concepts. The Internal Revenue Code as it existed in 1970 permitted one-half of the deceased's adjusted gross estate to be passed on to the surviving spouse without being taxed at the time of death. 26 U.S.C. § 2056. These assets, however, did not escape tax altogether. Because the deceased must leave these assets to the surviving spouse outright or must provide the surviving spouse with a general power of appointment over the assets in order to qualify them for the marital deduction, these assets will be taxed on the surviving spouse's death. One who has a general power of appointment is considered the owner of the assets for Federal tax purposes whether he or she exercises that power or not.

The next estate planning consideration was to provide for the remainder of the estate and the goal was, as with the first

---

[10]Paragraph nine further evidences Mary's intent to make full use of the marital deduction by prohibiting the executors from allocating expenses between income and principal "in such a manner as would deprive my husband of the full benefits of paragraph 4 which shall take precedence."

fifty per cent, to avoid double taxation — both at the death of
the first spouse and then of the surviving spouse. Thus, it was
common estate planning practice to place the remainder of
the estate in a trust to be distributed on the death of the
surviving spouse pursuant to the instructions in the will of
the first spouse to die. In this manner, although the assets
would be taxed initially, they would avoid a second tax on
the death of the surviving spouse because the surviving spouse
was not considered to be the owner of these assets if he or she
did not possess a general power of appointment over these as-
sets. 26 U.S.C. § 2041. The estate tax laws did, however,
permit the surviving spouse some degree of control over the
nonmarital deduction assets without subjecting those assets
to a second tax. See 26 U.S.C. § 2041 (b)(1). This degree of
control is called a limited or special power of appointment
and it is this degree of control that Joseph and Mary Angela's
issue argue Mary intended to grant Joseph in her will.
Therefore, only if it is determined that Joseph has a general
power of appointment over the nonmarital deduction share
of Mary's estate, will those assets be considered part of
Joseph's assets for Federal estate tax purposes at the time of
his death and thereby be subject to a second assessment of
Federal estate tax at that time. Recognizing that Mary had
evidently intended to avail herself of this standard planning
device and thus to benefit her family and those named in her
will rather than the Federal taxing authorities, we conclude
that the phrase "any amendments thereto" insofar as it grants
a general power of appointment to Joseph is inconsistent with
those intentions.[11]

A closer examination of Mary's will and Joseph's revocable
trust may explain how this anomaly arose.[12] Paragraph
thirteen of Joseph's revocable trust (of which Mary was the

---

[11]A further indication that the "any amendments thereto" language is in-
consistent with Mary's intent is that if the will grants Joseph a general
power of appointment, the assets would be subject to the claims of Joseph's
creditors, see *State Street Trust Co.* v. *Kissel*, 302 Mass. 328, 335 (1939).
Yet Mary's will gives Joseph no rights to either the income or the principal
of the nonmarital deduction share.

[12]To the extent provisions of Joseph's revocable trust are incorporated in
Mary's will, they are not extrinsic evidence and may be considered by the
court. Furthermore, the court is permitted, "for the purpose of removing
ambiguity and illuminating meaning or intention," *McKelvy* v. *Terry*, 370
Mass. 328, 334 (1976), to look to the circumstance existing and known to

life beneficiary and which corresponded to Mary's trust, the subject of this proceeding) granted Joseph himself the power to "revoke, modify, or amend" his own instrument; it also permitted the trustees after Joseph's death to amend the trust, "but only with respect to the powers of the Trustees and other administrative provisions, and not so as to alter the disposition of income or principal." Presumably, while Mary and Joseph were still alive, if Joseph amended his revocable trust in a manner she did not approve, she could have altered her will to reflect her intentions.[13] Moreover, if Joseph had predeceased Mary, the difficulty encountered here would not have arisen. This is so because on Joseph's death, his trust provides for a marital share equal to the marital deduction and for the remainder to be placed in a nonmarital trust that would be disposed of at Mary's death pursuant to the revocable trust he had established, which did not give her a right to amend, therefore not subjecting Joseph's nonmarital assets to the adverse tax consequences discussed above. The "any amendments thereto" in paragraph five only incorporates the trustees' power to make administrative amendments which would not contravene Mary's intention to minimize Federal estate tax liability.

The drafters of Mary's will and Joseph's revocable trust, however, failed to consider fully the implications of this same language in the provisions of Mary's will that concern the possibility of Mary predeceasing Joseph. The drafters appear to have copied the troubling language from paragraph five where, as we explain, it is harmless, into paragraphs four and six, the provisions that deal with the situation where Mary predeceases Joseph. By doing so, the drafters incorporated both the trustees' administrative power to amend and, more significantly, gave to Joseph a general power of appointment. Joseph's power, however, would not be limited by his death because these provisions assume that Mary dies before Joseph and, therefore, his amendments no longer just affect the assets in his trust but also the nonmarital deduction share of Mary's

Mary at the time. *Putnam* v. *Putnam*, 366 Mass. 261, 269-270 (1974) (considering wife's will testator reviewed prior to drafting his own).

[13]An indication that she might have disapproved of Joseph's amendments appears in paragraph one of her will: "I bequeath all my personal effects and other articles of tangible personal property . . . to my husband . . . and if he does not [survive me], to my daughters . . . *in equal shares* . . ." (emphasis added).

estate. In light of Mary's intention to minimize Federal estate taxes, she could not have intended this.

"This court has held that, where a settlor executes a trust instrument which, because of the mistake or inadvertence of the scrivener, fails to embody the settlor's intentions, the trust instrument may be reformed. *Berman* v. *Sandler*, 379 Mass. 506, 510 (1980). Such a mistake will be reformed upon ' "full, clear, and decisive proof" of mistake.' *Mickelson* v. *Barnet*, 390 Mass. 786, 792 (1984)." *Loeser, supra* at 365. See *id.* at 365-367 (reforming trust by reversing specific and general powers of appointment with respect to income and principal of the trust); *Berman, supra* at 508-511 (recognizing that the words "the first paragraph of" were mistakenly dropped, reformed instrument to accomplish minimization of estate tax). Mary's obvious tax planning intentions and a close examination of Mary's will and Joseph's trust demonstrate that there must have been an error. The guardian ad litem for Juanita's issue argues that the phrase "any amendments thereto" in paragraph four should be excised from the document thereby denying Joseph any power to alter the distribution of Mary's nonmarital deduction assets. Joseph and the guardian ad litem for Mary Angela's issue argue that the court would do less damage to the will and be more consistent with Mary's intentions if the troubling phrase were construed to mean that Joseph has a limited power to amend rather than no control at all. This would allow him to favor one child over another without incurring any unwanted Federal tax consequences. If, as we conclude, the phrase "any amendments thereto," giving Joseph a general power of appointment, were copied into paragraph four of Mary's will by a scrivener's error, the proper response here is to eliminate the power of appointment rather than engage in a more fine-tuned speculation about her possible intentions. We construe Mary's will as denying Joseph any power of appointment over Mary's nonmarital deduction share while allowing the trustees to retain such administrative powers of amendment as set out in paragraph thirteen of Joseph's revocable trust. In this manner, we give the language in Mary's will a meaning that does not interfere with Mary's clear intention to minimize Federal estate taxes. In reaching this result, we make no judgment as to the actual tax implications of the will as reformed but simply reform the will to effectuate the testator's

intentions at the time she established her will. We remand the case to the Probate and Family Court for entry of a judgment of reformation consistent with this opinion.

*So ordered.*