NationsBanc Mortgage Corporation *vs.* Paul K. Eisenhauer & another.[1]

No. 97-P-2061.

Suffolk. March 18, 1999. - July 27, 2000.

Present: Warner, C.J., Smith, & Gillerman, JJ.[2]

*Mortgage,* Discharge. *Mistake. Practice, Civil,* Findings by judge. *Negotiable Instruments,* Note, Discharge. *Evidence,* Hearsay, Business record. *Guardian,* Incompetent person.

In an action to quiet title, the holder of a mortgage did not demonstrate that the cancellation of the underlying note and the discharge of the mortgage were a mistake. [730-733]

In an action brought in the Land Court, the judge correctly excluded from evidence documents that were not admissible under the business records exception to the hearsay rule. [733-735]

A judge of the Land Court properly appointed, pursuant to G. L. c. 201, § 34, a guardian ad litem for an incompetent defendant, and there was no error in the judge's ordering the plaintiff to pay the guardian's expenses, compensation, and counsel fees. [735]

Civil action commenced in the Land Court Department on April 28, 1992.

The case was heard by *Leon J. Lombardi,* J.

*Kevin P. Scanlon* for the plaintiff.

*Eric A. Smith* for the guardian ad litem.

*Mary E. Eisenhauer,* pro se.

Smith, J. On April 28, 1992, Resolution Trust Corporation (RTC), as conservator for ComFed Savings Bank (ComFed), brought an action in the Land Court against Paul K. Eisenhauer (Paul), Mary E. Eisenhauer (Mary), John W. Kelleigh, Charles Farrell, and the Internal Revenue Service (IRS) to remove a

---

[1] Mary E. Eisenhauer.

[2] This case was argued before Chief Justice Warner and Justices Smith and Gillerman. Following the retirement of Chief Justice Warner, Justice Gelinas was added to the panel and participated in the decision.

cloud on the title to certain real property owned by the Eisenhauers located at 45 Woodland Drive, Marlborough. The complaint alleged that a mortgage on the property securing a note had been discharged in error and that a judgment should therefore issue stating that the mortgage discharge was void and the obligations under the mortgage remained outstanding.

On April 14, 1995, the complaint was amended by substituting KeyCorp Mortgage, Inc. (KeyCorp), for RTC and, on June 14, 1995, an assented-to second amended complaint substituted NationsBanc Mortgage Corporation (NationsBanc) for KeyCorp. Kelleigh, the holder of an attachment on the property, was later removed as a party; Farrell did not participate after filing an answer, and the IRS was defaulted pursuant to Mass. R.Civ.P. 55(a), 365 Mass. 822 (1974).

On June 14, 1995, at a pretrial conference, Mary represented that Paul was incompetent because of a mental illness and therefore was unable to defend the action brought by NationsBanc. As a result of an investigation into Paul's condition, a judge, on August 11, 1995, appointed Henry H. Thayer as guardian ad litem (guardian) for Paul. The guardian later reported that Paul, as a result of several problems concerning his mental processes, was "unable to provide information on any important subject, including the matter of [NationsBanc's] complaint."

A trial was held before a Land Court judge. After the trial, the judge issued a decision that included his findings of fact and rulings. Based on his findings, the judge ruled that the mortgage and note were discharged and cancelled respectively and that the plaintiff failed to prove that either act was done by mistake. He ordered the complaint dismissed. NationsBanc filed a timely notice of appeal from the judgment of dismissal.

On November 8, 1996, the guardian filed a motion requesting that NationsBanc be required to pay his "reasonable expenses including compensation and counsel fees." NationsBanc filed an opposition to that motion on December 16, 1996. On February 20, 1997, the judge ordered NationsBanc to pay the guardian's counsel fees and expenses of $25,589.00. NationsBanc then appealed from that order, and, on March 13, 1997, filed a "Motion for Entry of Final Judgment or in the Alternative to Stay the Court's February 20, 1997 Order Pending Appeal." On May 8, 1997, the judge stayed his February 20, 1997, order pending appeal, but ordered NationsBanc to pay six percent interest per year on the amount awarded by the order.

1. *Background of the dispute.* We summarize the judge's findings of fact, which we supplement with undisputed evidence in regard to the matter set forth in the complaint.

In 1972, the Eisenhauers purchased the subject property for $57,000. On April 17, 1984, they refinanced existing mortgages on the property with a $100,000 loan from ComFed. The adjustable rate note was secured by a mortgage on their property for the same amount. In conjunction with the transaction, the Eisenhauers executed the note, an adjustable rate rider, and the mortgage. The mortgage was recorded with the Middlesex South District registry of deeds.

Paul was a real estate appraiser for thirty-five years until the end of 1984. During the mid-1980's, Mary worked for Paul's real estate business, Paul K. Eisenhauer & Associates. From the end of 1984 through 1988, Paul was a partner with Joseph Ferro in a real estate investment partnership called F & I Realty Trust (F & I). F & I maintained a checking account at the First National Bank of Marlborough.

In 1983, Paul had open heart surgery. Thereafter, he became increasingly forgetful, and by the late 1980's, he was becoming incapable of conducting his normal business affairs. Mary was primarily responsible for paying the household bills, including payments on the mortgage, although she occasionally asked Paul to make a payment. Mary used a joint checking account maintained at Marlborough Savings Bank to make payments on the mortgage. Mary made those payments on the mortgage sporadically from 1984 to 1990 or 1991.

Because of their poor payment history, ComFed informed Paul and Mary by letter dated April 3, 1987, that their loan was in default and that the bank intended to foreclose. On July 24, 1990, ComFed filed a complaint in the Land Court under the provisions of the Soldiers and Sailors Civil Relief Act of 1940 for permission to foreclose on the mortgage. After obtaining a judgment authorizing entry and sale, a sale was scheduled for April 3, 1992.

In January or February 1991, Mary received notice that ComFed was seeking to foreclose on the property. As a result, she began searching for any documents that would forestall the proposed foreclosure. In early February 1991, Mary discovered an envelope in Paul's desk drawer from ComFed postmarked August 6, 1986. The envelope contained the 1984 note stamped "Paid November 25, 1985," and a fully executed mortgage

discharge dated August 4, 1986. Mary recorded the discharge in the Middlesex South District registry of deeds on February 4, 1991.

Just prior to the foreclosure sale (after RTC had become conservator for ComFed), RTC was notified that a discharge of the mortgage had been recorded. On January 31, 1992, RTC recorded an affidavit pursuant to G. L. c. 183, § 5B, stating that the mortgage had been discharged in error and that an outstanding principal balance of $96,142.08 existed. RTC then filed the complaint against the Eisenhauers.

2. *The discharge of the mortgage and the cancellation of the note.* "It is the general rule that, where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy, where the rights of intervening lienors have not been affected."[3] *North Easton Co-Op. Bank* v. *MacLean*, 300 Mass. 285, 292 (1938).

Because NationsBanc filed the complaint and seeks to change the status quo, it bears the burden of proving by " 'full, clear, and decisive' proof" that ComFed issued the mortgage discharge by mistake. *Mickelson* v. *Barnet*, 390 Mass. 786, 792 (1984), quoting from *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290, 317 (1871). *Loeser* v. *Talbot*, 412 Mass. 361, 365 (1992). Moreover, because NationsBanc is seeking to quiet title, it "has the burden of establishing its title and not simply by demonstrating the weaknesses or nonexistence of the defendants' title." *Sheriff's Meadow Found., Inc.* v. *Bay-Courte Edgartown, Inc.*, 401 Mass. 267, 269 (1987). The judge ruled that NationsBanc failed to meet its burden of showing mistake.

NationsBanc challenges many of the judge's findings of fact and claims that it did submit sufficient evidence showing that the discharge of the mortgage and the cancellation of the note were the result of a mistake.

"On appeal, we may not set aside findings of fact 'unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.' Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).' " *First Pa. Mort. Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 621 (1985). "If the trial judge makes one of several possible choices of what facts are supported by the evidence, the judge's choice

---

[3]There are no intervening lienors in this matter.

is not clearly erroneous." *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. 744, 751 (1993). Further, two other principles have particular relevance to the issues in this appeal. First, "[i]f the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 199, 203 (1986), quoting from *Anderson* v. *Bessemer City*, 470 U.S. 564, 573-574 (1985). Second, "the burden is squarely on the appellant to show an appellate court that a finding is clearly erroneous." *Edinburg* v. *Edinburg, supra* at 203, quoting from *First Pa. Mort. Trust* v. *Dorchester Sav. Bank, supra* at 621-622.

A key finding made by the judge was that, at the time of the mortgage discharge and the cancellation of the note, ComFed had several procedures in place to ensure that any mortgage discharge would be issued only after the underlying indebtedness had been paid. That finding was supported by the deposition testimony of Virginia S. Landers (then Hanrahan) who was employed by ComFed from September, 1985, until September, 1986. From April, 1986, to September, 1986, she was assistant vice-president of ComFed. Her duties included being in charge of ComFed's customer services, payoff, collection, and foreclosure departments. Landers was the only person at the bank responsible for executing discharges. Landers executed the mortgage discharge in her official capacity as assistant vice-president. The judge found that the discharge was prepared by Landers's subordinates, and she trusted her managers to follow established procedures and relied upon those persons to carry out properly their responsibilities.

NationsBanc did not produce any evidence explaining how any error or mistake could have occurred. It points to Landers's testimony that, during the summer of 1986, conditions in the pay-off department were "chaotic" because of a large number of refinancings. Landers, however, did not testify that the refinancings caused ComFed to disregard its procedures. Further, any "chaotic" condition in 1986 is not relevant in light of the cancellation date on the note: November 25, 1985.

The judge also found that, under G. L. c. 106, § 3-605, a

holder of any instrument may, without consideration, discharge a party of its obligation to pay by surrender of the instrument to the party to be discharged.[4] The judge noted that the Eisenhauers not only received the cancelled note but also the mortgage discharge. The judge concluded that there was an unambiguous surrender.

Courts interpreting this section of the Uniform Commercial Code then in effect have concluded that cancellation, renunciation, or surrender of a note must be intentional in order to effect a discharge, and thus a mistaken cancellation or surrender of a note is not effective. *Columbia Sav.* v. *Zelinger*, 794 P.2d 231, 235 (Colo. 1990). *Winkel* v. *Erpelding*, 526 N.W.2d 316, 319 (Iowa 1995). When the debtor, as here, possesses the cancelled note, a rebuttable presumption of discharge is created. *Ibid.*

NationsBanc argues that the judge committed error as a matter of law because he failed to recognize that § 3-605 creates only a rebuttable presumption of discharge when the maker has possession of the promissory note and because he failed to consider whether NationsBanc had rebutted that presumption. According to NationsBanc, if the judge had considered the issue, he could only properly have concluded from the evidence that NationsBanc had rebutted the presumption of discharge. In support of its argument, NationsBanc recites several reasons based on its version of the evidence introduced by the parties.

Although the judge did not consider that § 3-605 creates only a rebuttable presumption of discharge, it is clear from his

---

[4]General Laws c. 106, § 3-605, as inserted by St. 1957, c. 765, § 1, states in relevant part:

"(1) The holder of an instrument may even without consideration discharge any party

(*a*) in any manner apparent on the fact of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation or by striking out the party's signature; or

(*b*) by renouncing his rights by a writing signed and delivered or *by surrender of the instrument to the party to be discharged.*

"(2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto." (Emphasis supplied.)

A revised article 3 was approved by the Massachusetts Legislature on February 12, 1998, and resulted, amongst other things, in the rewriting and renumbering of this section; it is now G. L. c. 106, § 3-604. The new section is not applicable here.

findings of fact that he rejected NationsBanc's claim of mistake, and thus in effect ruled that NationsBanc had not rebutted the presumption of discharge. "[T]he judge's assessment of the quality of the testimony is entitled to our considerable respect because 'it is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence.' " *Rood* v. *Newberg,* 48 Mass. App. Ct. 185, 191 (1999), quoting from *Edinburg* v. *Edinburg, supra* at 203.

Based on this record, we hold that the judge's findings were supported "on [a] reasonable view of the evidence, including all rational inferences of which it was susceptible." *T.L. Edwards, Inc.* v. *Fields,* 371 Mass. 895, 896 (1976), quoting from *Bowers* v. *Hathaway,* 337 Mass. 88, 89 (1958). The judge did not commit error in ruling that NationsBanc did not meet its burden of showing mistake in the discharge of the mortgage and cancellation of the note.

3. *The exclusion of certain documents from admission in evidence.* At trial, the judge initially allowed three kinds of exhibits to be admitted in evidence de bene over the objection of the guardian. However, on a motion to strike the exhibits, the judge ruled that the documents were not admissible under the business records exception to the hearsay rule. See G. L. c. 233, § 78. The three kinds of exhibits included (1) documents obtained by NationsBanc from ComFed (exhibits 18 and 22); (2) documents prepared by NationsBanc or its predecessor Key-Corp, which were based on documents of ComFed (exhibits 19, 20, and 21); and (3) documents marked as exhibits at the deposition of Landers, although not produced by her (exhibit 24). NationsBanc argues on appeal that the judge committed error in refusing to allow it to introduce the records in evidence. We disagree.

"In order to be admissible, the custodian [of the records] must testify that the 'record was made in good faith in the regular course of business and before the beginning of the civil . . . proceeding aforesaid and that it was the regular course of such business to make such . . . record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter.' " *Quinn Bros.* v. *Wecker,* 414 Mass. 815, 818 (1993), quoting from G. L. c. 233, § 78.

a. *Exhibits 18 and 22.* These exhibits were mortgage loan ledger sheets created by ComFed and transferred to RTC,

then to KeyCorp, and then to NationsBanc. The keeper of the records for NationsBanc testified that the records were in the Eisenhauer loan file when that file was sent to NationsBanc. The keeper did not supply any evidence that would satisfy the conditions of G. L. c. 233, § 78. She worked for NationsBanc and KeyCorp., but never worked for ComFed or RTC.

The judge ruled that, because the records were not made by NationsBanc, but rather were received by it, the indicia of reliability were missing, and accordingly excluded the exhibits, citing *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. 402, 409 (1982) (Liacos, J. concurring) ("The insurer did not 'make' this record, it simply received it"). We see no reason to depart from this principle as expressed in the *Wingate* case.

b. *Exhibits 19, 20, and 21.* Exhibits 19, 20, and 21 were properly excluded because, while they were made by NationsBanc or KeyCorp, they were inadmissible because they were based on information provided by ComFed. One business can rely upon a record made by another, but each level of hearsay inherent in such a document must fall within an exception to the hearsay rule. *Wingate* v. *Emery Air Freight Corp.*, *supra* at 405. Here, NationsBanc failed to offer any evidence that the person initially reporting the information had personal knowledge or had a business duty to report the material accurately. See G. L. c. 233, § 78. Accordingly, the documents contain hearsay and, because they do not fall within any exception to the hearsay rule, they are inadmissible.

Further, those same documents were also inadmissible because they fail to meet the threshold requirement that the record has to be made before the proceedings commence. G. L. c. 233, § 78. The present action was filed in April, 1992, and the documents were prepared after that date. The judge did not commit error in excluding them.

c. *Exhibit 24.* This exhibit included documents marked as exhibits at the deposition of Landers, although they were not produced by her. There was no testimony at trial indicating that these were business records, or that they met any of the foundational requirements for admission pursuant to G. L. c. 233, § 78. Landers was not the custodian of the records, and NationsBanc's keeper of the records did not testify concerning

this evidence. Consequently, these documents were properly determined to be inadmissible.[5]

4. *The appointment of the guardian ad litem and the payment of his expenses.* NationsBanc claims that the judge lacked authority to appoint a guardian ad litem for Paul. The record shows that NationsBanc agreed to the appointment of the guardian ad litem. It was not until after the guardian submitted his bill that NationsBanc objected to the appointment. Thus, NationsBanc had waived any objection to the appointment of the guardian ad litem.

In any event, the judge had authority to appoint the guardian ad litem pursuant to G. L. c. 201, § 34, as appearing in St. 1976, c. 548. That statute provides in pertinent part that:

> "If . . . [a] person under disability . . . may be . . . interested in any property real or personal, or in the enforcement or defense of any legal rights, the court in which any action, petition or proceeding of any kind relative to or affecting any such estate or legal rights is pending may . . . appoint a suitable person to appear and act therein as guardian ad litem . . . of such . . . person under disability. . . ."

As to the guardian ad litem's expenses, including counsel fees, G. L. c. 201, § 35, authorizes the judge to determine the reasonable expenses including compensation and counsel fees of the guardian ad litem. Therefore, there was no error in the judge's ordering NationsBanc to pay the guardian's expenses, compensation, and counsel fees.[6]

---

[5]The Land Court judge noted in his decision that, "[e]ven if the disallowed evidence had been admitted, it would not prove, without explanation, the execution of the discharge. The records themselves might have been in error in not reflecting the payment in full of the loan. If anything, the conclusion I draw regarding ComFed's procedures in discharging mortgages and canceling notes is that the process had several built-in checks to prevent specifically the kind of mistake plaintiff now alleges occurred. The procedures and personnel in charge of the procedures were portrayed at trial as thorough and competent, which influenced today's outcome."

[6]NationsBanc challenges the judge's order conditioning the stay of his order on the additional payment of six percent interest per year on the expenses awarded by the order, said interest was to be calculated as accruing from February 20, 1997. As the plaintiff did not file a notice of appeal from this order, we decline to review it. In any event, as the plaintiff alternatively

The judgment dismissing NationsBanc's complaint is affirmed. The order allowing the guardian's request for expenses dated February 20, 1997, is affirmed.

*So ordered.*

---

sought the entry of a final judgment — rather than a stay of the order — so that payment would have been automatically stayed pursuant to Mass.R.Civ.P. 62(a), 365 Mass. 830 (1974), but also subject to interest, see *Nardone* v. *Patrick Motor Sales, Inc.*, 46 Mass. App. Ct. 452, 453 & n.3 (1999), the plaintiff did not incur any detriment by the judge's choice of the stay option.