FLEET NATIONAL BANK, trustee,[1] *vs.* EDWARD WAJDA & others.[2] June 28, 2001. *Trust,* Reformation, Taxation.

Fleet National Bank (Fleet), as trustee under a declaration of trust executed by Willard L. Haskell on or about February 23, 1983, and as executor of his estate, commenced this action in the county court seeking reformation of the trust instrument. Fleet alleged that, because of a mistake in drafting, the instrument fails to establish a charitable remainder unitrust that satisfies the requirements of the Internal Revenue Code, as Haskell intended.[3] All of the trust beneficiaries that stand to be affected by the proposed reformation have assented to the relief sought, as has the Attorney General of Massachusetts, through his public charities division. The Internal Revenue Service was served with a copy of the complaint, but has not appeared in the case. A single justice reported the case to the full court without decision. See *Walker* v. *Walker,* 433 Mass. 581, 582-583 (2001); *Putnam* v. *Putnam,* 425 Mass. 770 (1997) (reforming charitable remainder unitrust).

*Facts.* The declaration of trust provides that the trust was revocable during Haskell's lifetime and became irrevocable on his death. Haskell died on August 7, 1998. Under the terms of the trust, certain monetary distributions were to be made to various charitable organizations following Haskell's death, and there was a provision for the disposition of tangible personal property in the trust. The remainder of the trust principal is to be held in a charitable remainder unitrust.[4] The life beneficiary of the unitrust, Haskell's brother-in-law, is to receive quarterly distributions totaling six per cent of the net fair

---

$801,500. Fleet represents that, without reformation, the estate would be required to pay an additional $268,385 in Federal estate taxes.

[1]Under a declaration of trust executed by Willard L. Haskell on or about February 23, 1983. Fleet National Bank also brings this action in its capacity as executor of his estate.

[2]MCP Hahnemann University, as successor to Women's Medical College of Philadelphia, Pennsylvania; Shriners' Hospital for Children of Springfield; Mount Holyoke Masonic Association, Inc.; First Congregational Church of South Hadley Falls; the Attorney General; and the Internal Revenue Service.

[3]For a basic description of charitable remainder trusts, including unitrusts, see 1 M. Kove & J.M. Kosakow, Handling Federal Estate and Gift Taxes §§ 6:174 et seq. (6th ed. 2000). See also *Putnam* v. *Putnam,* 425 Mass. 770 (1997).

[4]The declaration of trust does not use the term "charitable remainder unitrust." It is abundantly clear from the document, however, that that is what Haskell intended. For example, the document repeatedly refers to a "unitrust," a term used in the Internal Revenue Code only in reference to charitable remainder unitrusts; the document also refers to several sections of the Code relevant to unitrusts. Moreover, with the exception discussed below, the unitrust appears to be structured as a charitable remainder unitrust.

market value of the trust assets each year,[5] and, on his death, the remaining assets are to be distributed in designated percentages among four named charitable organizations.

The declaration of trust further requires, however, that the trustee pay any amounts requested by Haskell's executor "on account of any [F]ederal estate taxes, any [S]tate inheritance or estate taxes and any other taxes which may be assessed by reason of [Haskell's] death, expenses of [Haskell's] last illness and funeral, [Haskell's] debts and the expenses of the administration of [his] estate."[6] Fleet correctly argues that if these payments are to be made out of the unitrust assets, the unitrust may not qualify as a charitable remainder unitrust under I.R.C. § 664(d)(2). Specifically, § 664(d)(2)(B) prohibits any payments from a unitrust to or for the use of any person other than distributions to a life beneficiary under § 664(d)(2)(A), distributions to qualified charitable organizations, and certain types of transfers involving employer securities. The payment of Haskell's estate taxes, debts, and estate administration expenses out of unitrust assets would violate the prohibition of § 664(d)(2)(B), and, as a result, negate the deductibility of the charitable remainder interests under I.R.C. § 2055 (governing estate tax charitable deduction).[7] See 26 C.F.R. § 1.664-1(a)(6) example 3 (2000); 1 M. Kove & J.M. Kosakow, Handling Federal Estate and Gift Taxes § 6:184, at 6-289 (6th ed. 2000) (citing Rev. Rul. 82-128, 1982-2 C.B. 71 for the proposition that "a trust does not qualify as a charitable remainder trust, and no deduction is allowable from the gross estate if it is possible that [F]ederal estate and [S]tate death taxes may be payable from the trust assets").

*Discussion.* A trust instrument may be reformed under Massachusetts law if, because of a mistake, it fails to conform to the settlor's intent. *Walker* v. *Walker, supra* at 587, and cases cited. In particular, in cases like this "[w]e have allowed the reformation of trust instruments which produced tax results that were clearly inconsistent with the settlor's tax objectives." *Id.*, quoting *BankBoston* v. *Marlow*, 428 Mass. 283, 285 (1998). See *Putnam* v. *Putnam, supra*, and authorities cited. It is clear from the face of the document in this case that Haskell intended to establish a charitable remainder unitrust that complies with, and therefore takes advantage of the estate tax charitable deduction allowed under, the Internal Revenue Code. Unless his declaration of trust is reformed, however, his intent may not be realized and his estate might not receive the tax benefits that he intended to flow from the creation of a unitrust; the respective interests of the life and charitable remainder beneficiaries (whom he obviously intended to benefit) will be greatly diminished by the imposition of taxes that he clearly attempted to avoid.[8]

Fleet maintains that any defect in the unitrust can easily be corrected, and

---

[5]Haskell's sister also was named as a life beneficiary of the unitrust, but she predeceased him.

[6]Haskell's will authorizes the executor, in its discretion, to seek payment of such taxes, debts, and expenses from the trustee.

[7]For a charitable remainder interest to qualify for the estate tax charitable deduction, I.R.C. § 2055(e)(2)(A) requires that the interest be in a unitrust that complies with the requirements of § 664 (or in a so-called charitable remainder annuity trust or pooled income fund, neither of which is applicable here).

[8]Fleet represents that, at the time of Haskell's death, $1,108,081.90 was available to fund the unitrust, with the charitable remainder interests being valued at approximately

Haskell's intent thereby effectuated, by reforming the declaration of trust slightly, as follows: Article III, paragraph B, which governs the trustee's payment of Haskell's estate taxes, debts, estate administration expenses, and the like, would be moved to Article I, paragraph D, immediately following the provisions governing the initial gifts to charities (Article I, paragraph B) and the disposition of tangible personal property (Article I, paragraph C); the current Article I, paragraph D, establishing the charitable remainder unitrust, would be redesignated as Article I, paragraph E.[9] The unitrust would therefore be funded with principal remaining *after* the payments and distributions required under Article I, paragraphs B, C, *and* new paragraph D have been made. In other words, these minor changes would have the effect of requiring payment of Haskell's estate taxes, debts, estate administration expenses, and the like before the unitrust is funded, and not out of the unitrust assets.

As we have stated, Haskell's obvious intent was to create a charitable remainder unitrust that complies with the requirements of the Internal Revenue Code, which would greatly reduce the tax burden on his estate and, consequently, would greatly enhance the interests of those whom he intended to benefit. Because the proposed reformation would appear to accomplish Haskell's intent, we allow it as a matter of State law.[10]

*Conclusion.* We remand this case to the county court for entry of a judgment reforming Willard L. Haskell's declaration of trust in the manner set forth in paragraph 26(a) of the complaint and note 9, *supra*. The reformation is to be effective as of the date the trust instrument was executed.

*So ordered.*

The case was submitted on briefs.

*Susan A. Mielnikowski* for estate of Willard L. Haskell.

---

$801,500. Fleet represents that, without reformation, the estate would be required to pay an additional $268,385 in Federal estate taxes.

[9]Presumably the existing paragraph E in Article I would become paragraph F, and the references in that paragraph to paragraphs D.2 and D.9 would become references to the new E.2 and E.9.

[10]Fleet seeks reformation of the trust in other respects as well, but makes no argument that any of its other proposed changes is necessary to fulfil Haskell's intent. We therefore do not address these other matters. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See *Hillman* v. *Hillman,* 433 Mass. 590, 595 n.10 (2001); *Walker* v. *Walker,* 433 Mass. 581, 589 (2001).