FREDERICK N. PELLEGRINI, administrator,[1] vs. LUCY B.
BREITENBACH & others.[2]

Norfolk. February 8, 2010. - May 25, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Will,* Construction. *Taxation,* Estate tax.

This court declined to enter a judgment retroactively reforming certain provi-
sions of a will in order to create a charitable remainder annuity trust
(CRAT) under the Internal Revenue Code to minimize Federal and State
estate taxes and to maximize distributions to the charitable remainder
beneficiaries, where the will was unambiguous and there was no indication
that there was any mistake on the part of the decedent's counsel in the
drafting of the will; where there was no expression in the will or elsewhere
that the decedent was concerned about the possible tax consequences as-
sociated with any of his bequests; where there was nothing to suggest that
the resulting alterations in the beneficial interests under the will would
comport with the decedent's wishes; where the action was commenced ten
years after the decedent's death; and where there was no language in the
will indicating that the decedent wished that the lifetime beneficiaries have
at least annual distributions of income interest, as would be the case with a
CRAT. [879-882]

COMPLAINT filed in the Norfolk Division of the Probate and
Family Court Department on May 6, 2008.

A motion to report the case to the Appeals Court was allowed
by *Christina L. Harms,* J. The Supreme Judicial Court granted a
request for direct appellate review.

*Theresa Kelly Banash* for the plaintiff.

---

[1] Of the estate of William W. Bruinsma (decedent). The original action was
commenced by Ruth M. Hobden, who was named as the executrix of the
decedent's estate. She subsequently died, and on October 23, 2009, Frederick
N. Pellegrini was appointed "administrator de bonis non." See G. L. c. 193,
§ 9. He was substituted as the plaintiff in this appeal. Where appropriate, our
reference to the plaintiff is to Hobden and Pellegrini collectively.

[2] Ruth M. Hobden, the American Cancer Society, the American Heart
Association, the Commissioner of Internal Revenue, the Department of
Revenue, and the Attorney General.

IRELAND, J. On May 6, 2008, Ruth M. Hobden (Hobden), the original executrix of the estate of William W. Bruinsma (decedent), see note 1, *supra*, filed a complaint against the beneficiaries of the decedent's will, Lucy B. Breitenbach, Hobden,[3] the American Cancer Society, and the American Heart Association (beneficiaries), and against the Commissioner of Internal Revenue, the Department of Revenue, and the Attorney General, seeking declaratory relief and reformation of the decedent's will. Specifically, the complaint seeks reformation of the decedent's will to create a charitable remainder annuity trust (CRAT) under the Internal Revenue Code to minimize estate taxes and to maximize distributions to the American Cancer Society and the American Heart Association (charitable beneficiaries).[4]

The beneficiaries and the Attorney General assented to the relief sought by the complaint.[5] A judge in the Probate and Family Court reported the case to the Appeals Court. See G. L. c. 215, § 13; Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996). We granted the plaintiff's application for direct appellate review. See *Commissioner of Internal Revenue* v. *Estate of Bosch*, 387 U.S. 456, 465 (1967); *Walker* v. *Walker*, 433 Mass. 581, 582 (2001). We decline to grant the requested relief.

1. *Background.* The facts of the case are set forth in a statement of agreed facts presented by the plaintiff (as purportedly "agreed to" by those who assented to the relief sought), and

---

[3]Hobden was both executrix (prior to her death) and a beneficiary of the decedent's will.

[4]A trust that meets the definition of a charitable remainder annuity trust (CRAT), see I.R.C. § 664(d)(1) (2006), qualifies for an estate tax deduction under I.R.C. § 2055(e)(2)(A) (2006). An estate tax deduction under I.R.C. § 2055(e)(2)(A) is also permitted for a trust that satisfies the definition of a charitable remainder unitrust (CRUT), see I.R.C. § 664(d)(2) (2006). In general terms, a "charitable remainder trust is a trust from which the trustee is required to pay an annuity or unitrust amount at least annually to one or more beneficiaries, at least one of which is not a charity, for the lives of the individual beneficiaries or for a term of years [not to exceed twenty years, see I.R.C. § 644(d)(1)(A) and (d)(1)(B) (2006)], and thereafter . . . transfer the remainder to . . . a qualified charity." G.G. Bogert, Trusts and Trustees § 264.25, at 507 (rev. 2d ed. 1992). CRATs and CRUTs are generally characterized as "split-interest trusts," because, while they benefit one or more private individuals, they are charitable in part. *Id.* at § 264.25, at 503.

[5]Default judgments were entered against the Commissioner of Internal Revenue and the Department of Revenue for failure to appear and defend the matter. See Mass. R. Civ. P. 55 (b) (2), as amended, 454 Mass. 1401 (2009).

derive from affidavits. The decedent was a frugal man and was extremely private about his assets. In 1993, he executed a simple, two-page will that provides that his friend Hobden, and his sister, Breitenbach, each receive "[o]ne-half of the income including capital gains distributions from my securities and bank accounts" during their lifetimes.[6] The will also provides that, after the deaths of Hobden and Breitenbach, the residue of his estate be shared jointly by the American Cancer Society and the American Heart Association.[7] The will was drafted, in accordance with the decedent's instructions, by an attorney hired by him, Russell F. Peck.

Prior to the will's execution, the decedent was reluctant to discuss the extent of his assets with Peck, and did not disclose the size of his estate to him. The decedent, however, did inform Peck that he resided in a subsidized senior citizen housing facility, and indicated that he wished to keep the legal costs associated with making a will as low as possible. Based on the decedent's statements to him, Peck concluded that the decedent's estate was not of a sufficient size to require the payment of estate taxes, and drafted the simple, two-page will that the decedent executed.

The decedent died on November 10, 1998, at the age of eighty-four. He never married and had no children. He lived alone in a subsidized senior citizen housing facility. At the time of his death, the value of the decedent's estate, unbeknownst to Peck or the decedent's friends, totaled approximately $1.7 million.

Peck explained that, if he had been informed of the actual size of the decedent's estate, he would have drafted a much more sophisticated estate planning document that would have qualified as a CRAT. The plaintiff alleges that, if the will is not reformed to create a CRAT, the estate will be required to pay combined State and Federal estate taxes of approximately

---

[6] In the event that one of the lifetime beneficiaries predeceased the other, the will states that "the survivor of the two shall receive all the income from my securities and bank accounts." On Hobden's death, this provision took effect and Breitenbach, as represented by the plaintiff's counsel during oral argument, is now the sole income recipient.

[7] Although the decedent was frugal, he made annual donations to charities for at least a forty-year period.

$466,733, to the detriment of the charitable beneficiaries. Based on his conversations with the decedent, Peck does not believe that the decedent understood the legal significance, namely the estate tax consequences, of withholding accurate information concerning the size of his estate. Based on their conversations with the decedent, Hobden and another friend of the decedent stated that he would not have wanted his life savings to go to the taxing authorities. They went on to give opinions that, had the decedent known of the tax consequences implicated, he would have wanted to modify his will to minimize estate taxes and maximize the bequests to the charitable beneficiaries. Peck shares this belief.

It was represented at oral argument that, to date, no estate taxes have been paid.

2. *Discussion.* As has been stated, the plaintiff seeks reformation of the decedent's will to create a CRAT. Under Federal tax law, as has been noted, see note 4, *supra,* a deduction for estate tax purposes is allowed "for the gift of a remainder interest following an annuity or unitrust interest in a qualified charitable remainder trust." G.G. Bogert, Trusts and Trustees § 264.25, at 499 (rev. 2d ed. 1992). To qualify as a CRAT pursuant to I.R.C. § 664(d)(1)(A) (2006), a CRAT must, among other requirements, provide for a guaranteed annuity, of not less than five per cent nor more than fifty per cent, of the initial fair market value of the trust assets, to be paid at least annually to a noncharitable beneficiary. Here, the plaintiff correctly states that the lifetime interests under the decedent's will (the bequest to each of the lifetime beneficiaries of "[o]ne-half of the income including capital gain distributions from my securities and bank accounts") does not conform to the above requirement by providing a guaranteed annuity to a noncharitable beneficiary. Consequently, to create a CRAT, modification of the will is necessary for this reason alone. The plaintiff asserts that, in all other respects, the provisions of the decedent's will "generally conform" to the requirements for a CRAT.

Under Massachusetts law, we have permitted reformation of a trust instrument in circumstances where, "because of a mistake, it fails to conform to the settlor's intent." *Fleet Nat'l Bank* v. *Wajda,* 434 Mass. 1009, 1010 (2001), citing *Walker* v. *Walker,*

*supra* at 587. Reformation has been justified where a trust instrument "produced tax results that were clearly inconsistent with the settlor's tax objectives," *BankBoston* v. *Marlow*, 428 Mass. 283, 285 (1998), and cases cited, and when a settlor has been mistaken about the tax consequences of a trust provision, *Simches* v. *Simches*, 423 Mass. 683, 687 (1996).[8]

In particular, we have allowed reformation of a charitable remainder unitrust (CRUT) to secure compliance with the Internal Revenue Code and to avoid a considerable depletion of the beneficial interests intended for the charitable remainder beneficiaries. See *Fleet Nat'l Bank* v. *Wajda*, *supra*. In addition, we have permitted reformation of a trust instrument so that it would qualify as a CRAT for Federal tax purposes in accordance with the settlor's intent. *Booth* v. *Kornegay*, 452 Mass. 1005, 1007 (2008). *Ratchin* v. *Ratchin*, 439 Mass. 1014, 1015 (2003). In circumstances where the relevant donative documents included both a will and a trust, and a conflict of the terms of those instruments arose that had tax implications that did not reflect the decedent's intended tax objectives, we have also granted appropriate relief. *Seegel* v. *Miller*, 443 Mass. 1007, 1009 (2005). *Shawmut Bank, N.A.* v. *Buckley*, 422 Mass. 706, 712-715 (1996).

In contrast to the above cited cases, there is no trust instrument in this case. The plaintiff asks us to reform a will to create a trust, namely a CRAT. We decline to do so.

The plaintiff has not cited *Flannery* v. *McNamara*, 432 Mass. 665 (2000) (*Flannery*), in which we stated that "[c]ourts have no power to reform wills."[9],[10] *Id.* at 673, quoting *Sanderson* v.

---

[8] "[F]ull, clear, and decisive proof" of mistake is required to justify reformation of a trust instrument. *Simches* v. *Simches*, 423 Mass. 683, 687 (1996), quoting *Berman* v. *Sandler*, 379 Mass. 506, 509 (1980).

[9] Counsel for the plaintiff did acknowledge, at oral argument, the general rule disfavoring reformation of wills. But see Mass. R. Prof. C. 3.3 (a) (3), 426 Mass. 1383 (1998), which provides that a "lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." While proceedings such as this "lack some of the usual adversary characteristics," *Walker* v. *Walker*, 433 Mass. 581, 582 (2001), it is also worth noting that in this matter the Attorney General filed an assent without acknowledging *Flannery* v. *McNamara*, 432 Mass. 665 (2000).

[10] The relief sought by the plaintiff would contravene the Statute of Wills. See *Flannery, supra* at 674. Any change to the current statutory scheme is properly left to the Legislature.

*Norcross*, 242 Mass. 43, 46 (1922). The plaintiff, therefore, makes no claim that this case might be an appropriate one in which to reconsider *Flannery*, although that is what would be necessary to accomplish the relief he seeks. Further, the plaintiff concedes that the will in this case is unambiguous. There is also no indication that there was any mistake on the part of decedent's counsel in the drafting of the will. To the contrary, counsel stated in his affidavit that he had followed his client's request to the letter.

Although the decedent's charitable intent is demonstrated by his bequest of the remainder of his estate to the charitable beneficiaries, there is no expression in his will or elsewhere that he was concerned about the possible tax consequences associated with any of his bequests. Rather, based on the affidavits submitted, it appears that he was quite inclined to keep his estate planning simple and, thus, inexpensive, so that he could keep his own legal fees to a minimum. He also may not have wanted to disclose the value of his assets in order to retain his subsidized housing.

Additionally, although the plaintiff's brief focuses on the potential losses to the charitable beneficiaries, the plaintiff also acknowledges that reformation would inure as well to the benefit of the lifetime beneficiaries. We may thus assume that, to date, the lifetime beneficiaries received income distributions that were less than the annual annuity amount sought by the reformation, namely, five per cent of the initial fair market value of the decedent's securities and bank account amounts (which would amount to approximately $85,000). The plaintiff has not disclosed what this monetary difference is, but on this record we may reasonably assume that the change would alter the beneficial interests under the will, and there is nothing to suggest that this comports with the decedent's wishes.

The timing of the request for reformation is also troubling, occurring ten years after the decedent's death and, significantly, seeking retroactive reformation. It appears that, even were this complaint one for modification of a trust instrument, the Federal taxing authorities may not give effect to the reformation on account of it being untimely commenced. See I.R.C. § 2055(e)(3)(C)(iii) (2006).

Moreover, there is no language in the will, and, in particular,

in the language of the bequest to the lifetime beneficiaries, indicating that the decedent wished that they have at least annual distributions of income interest, as would be the case with a CRAT. Cf. *Booth* v. *Kornegay, supra* at 1005 (trust provided for distribution of "annual net income and any previously accumulated undistributed income"). Had the decedent intended in his will to establish a charitable remainder trust, we cannot say on this record that there is any indication that he would have opted for a CRAT as opposed to a CRUT. Both trusts provide income to lifetime beneficiaries, but operate differently:

> "In making a choice between an annuity trust and a unitrust for an estate plan various factors should be considered. The amount of each payment to be made from an annuity trust becomes fixed at the inception of the trust and may not be changed; such amount remains constant irrespective of changes in the underlying trust assets. If the purchasing power of the dollar declines due to inflation, the real value of the annual payments to the individual beneficiary will be reduced although the dollar amount of the payment will remain constant. If the beneficiary will rely on the income payments, a unitrust may be preferable. The assets of an annuity trust need not be revalued each year, so such a trust may be easier to administer than a unitrust if the trust assets are to consist in part or whole of closely held securities, real estate or other assets difficult to value. A disadvantage of the annuity trust is that no additions may be made to the trust whereas additional transfers may be made to a unitrust. . . . A unitrust has the disadvantage of the necessity for annual valuations [on which a fixed percentage of not less than five per cent of the net fair market value of the trust assets is paid to the lifetime beneficiary]. Trustees of both types of trust may have problems in having adequate funds available for the regular payment of the annuity or unitrust amount if assets comprising the trust are not readily saleable, or if sales must be made in a depressed market."

G.G. Bogert, Trusts and Trustees, *supra* at § 264.25, at 508, 513-514.

3. *Conclusion.* The case is remanded to the Probate and Family Court for entry of a judgment declaring that reformation as requested in the complaint is denied.

*So ordered.*